Clarence Paul WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 79–1143.

District of Columbia Court of Appeals.

Argued Oct. 1, 1980.

Decided Dec. 18, 1980.

Mady Gilson, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., on brief, for appellant.

Keith A. O'Donnell, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Steven C. Tabackman, Leonard E. Birdsong, and Robert B. Cornell, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, HARRIS and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents one question: whether the government broke its agreement not to oppose a substantial suspended sentence and residential drug program for appellant, Clarence Paul White, in exchange for his agreement to plead guilty to charges of second-degree burglary and forgery. We answer in the affirmative, vacate appellant's sentences, and remand for resentencing by a different judge.

### I.

On October 18, 1978, the government filed an information charging appellant with second-degree burglary, D.C.Code 1973, § 22–1801(b), and forgery, *id.*, § 22–1401. Appellant agreed to plead guilty to both counts in exchange for the government's promise not to oppose "a substantial suspended sentence in lieu of incarceration" and "a residential drug program." The court accepted the agreement, and appellant entered his plea. Later, at sentencing, appellant's counsel argued that the court should follow the recommendation of the presentence report by placing appellant in a highly structured drug program, such as Second Genesis, which had agreed to accept him. The court indicated a reluctance to follow the proposal:

My concern with that recommendation . . . stems from two facts:

First, he has been through the NARA [1] Program and returned to drug abuse;

Second, while in the Community, in work-release status, he was utilizing drugs. I am not confident that the Second Genesis Program can impede the use and abuse which consistently brings him here, in the Community setting.

Have you and your client considered that matter? If so, what are your representations?

Defense counsel replied that, although he could not promise appellant would resolve his drug problem at Second Genesis, this program was not loosely run, and appellant realized that if he did not follow through, he would probably get a maximum sentence for his crimes. Defense counsel concluded by saying that "the only way to give this man the benefit of the possibility would be to try to work under the assumption that he is serious about it. I think he is, and I would ask that Mr. White address the Court on that issue."

Before hearing from appellant, the court asked the government if it had any representation to make. The prosecutor responded (and defense counsel objected) as follows:

[Prosecutor]: Yes, Your Honor. In view of the plea agreement, the Government does not oppose this drug rehabilitation program, if the Court so decided at sentence. However, the Government is concerned with what the Court said, that he has [gone] through so many programs.
[Defense Counsel]: Your Honor, I object to this. I believe that, obviously, once the Court has made its sentence, the Government can do nothing. But I think the plea bargain was that the Government would not allocute against a drug program, and I think that is precisely what [the prosecutor] is doing.
[Prosecutor]: I'll withdraw that, Your Honor. It appears in this case, that there was a great deal of checks taken, at a job where the defendant had authority, some

trust. Now, it wasn't one check that was passed, or two checks. There were a series of checks. These checks both went into the District of Columbia and Virginia. It was an ongoing scheme, some organization which would take into cognizance of a natural person, some reflection and some planning we feel that is more indicative, at least there was some criminal intent, specific criminal intent, even though that may have been caused by other factors. But it is one that should not be looked at just lightly, as being what may have been the factors that motivated him. In view of his age, in view of his knowledge of the criminal system, and his knowledge of the World situation. And that fact, I believe, the Court should take into consideration concerning what has been the continued activity of the defendant before the Bar at this time.

After hearing from appellant, who asked for the opportunity "to go to Second Genesis," the court rejected that alternative and imposed concurrent prison sentences of three to nine years on each charge (to be served consecutively to any previously-imposed sentence).

Appellant then filed a *pro se* Motion to Reduce or Modify Sentence. *See* Super.Ct. Cr.R. 35(a). The court appointed the Public Defender Service (PDS) to represent him; PDS filed a Motion to Reduce Minimum Portion of Sentence. In this motion, PDS argued that the prosecutor's statements at sentencing, although not explicitly asking for appellant's incarceration, implicitly had suggested that the government favored incarceration and thus "violated the essence and spirit of the promise made by the United States Attorneys Office . . . ." In responding to the motion, the government conceded that "a reading of the transcript raises the possibility that the Court could have read into the Assistant United States Attorney's remarks a disapproval of the suspended sentence option." The government added, however, that "[s]uch an infer-

---

1. Narcotic Addict Rehabilitation Act, 28 U.S.C. §§ 2901–06 (1976).

ence is by no means compelled, and any suggestion of disapproval was at best ambiguous." The government then argued that even if it had violated the plea agreement, the appropriate remedy would be withdrawal of the plea or resentencing before a different judge, not a reduction in sentence.

The trial court denied the motions to reduce sentence. Specifically addressing the issue of the government's bargain, the court stated that the government had had a duty not to oppose a suspended sentence but had retained the right to allocute as to the length of the suspended sentence. The court concluded, "The factors cited by the Government were objectively relevant to the length of the suspended sentence and would appear to be consistent with its agreement."

Appellant filed a *pro se* Motion to Vacate his sentence under D.C.Code 1973, § 23–110, specifically alleging the government's breach of the plea agreement. The court denied the motion, whereupon appellant timely noted this appeal. *See id.* § 11–721(a)(1); D.C.App.R. 4 II(b)(1).

## II.

■ The government has a duty to fulfill its promises in a plea bargain. The Supreme Court stated in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499; *accord, United States v. Bowler*, 585 F.2d 851, 853 (7th Cir. 1978); *United States v. Crusco*, 536 F.2d 21,

26 (3d Cir. 1976); *United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974); *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973); *see Braxton v. United States*, D.C. App., 328 A.2d 385, 388 (1974). If the government violates its bargain, it is irrelevant that the government's remarks may not have influenced the sentencing judge;[2] the court must remand the case for resentencing or, in appropriate cases, to allow withdrawal of the defendant's plea. *Santobello, supra* 404 U.S. at 262–63, 92 S.Ct. at 498–499; *see Bowler, supra* at 855–56; *Crusco, supra* at 26–27; *Brown, supra* at 377–78; *United States v. Ewing*, 480 F.2d 1141, 1143 (5th Cir. 1973) (per curiam); *Correale, supra* at 949–50. The only issue here, then, is whether the government violated its plea agreement. If it did, appellant's sentence cannot stand.

■ In evaluating the prosecutor's allocution in this case, it is important to note, first, that the government must meet a standard of strict compliance with its agreement. *Bowler, supra* at 853–54; *Correale, supra* at 947; *see Crusco, supra* at 26; *Brown, supra* at 378. The court will construe any ambiguity against the government. *State v. Witte*, 308 Minn. 214, 216 & n.2, 245 N.W.2d 438, 439 & n.2 (1976) (en banc) (per curiam) (collecting cases); *see State v. Kimes*, 188 Neb. 85, 87, 195 N.W.2d 216, 218 (1972). Thus, in *Crusco, supra*, the court held that the government, in challenging defense representations at sentencing, had violated its agreement "not to take a position on sentencing." *Id.* at 25. In light of *Santobello, supra*, the court refused to construe the agreement narrowly to prohibit the government only from making a specific sentencing recommendation. *See*

---

**2.** The Supreme Court has stated that even though "we have no reason to doubt" the sentencing judge's statement "that the prosecutor's recommendation did not influence him, ... we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case.... We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge."

*Santobello, supra* 404 U.S. at 262–63, 92 S.Ct. at 498–499. Contrary to the point made by our dissenting colleague, therefore, we are not concerned that the sentencing judge may have been "influenced impermissibly by the prosecutor's remarks," *see post* at 622 for the judge's reaction to the allocution is not germane here. In the interest of strictly enforcing the prosecutor's promises, the Supreme Court has chosen to rule out any possibility for harmless error based on a subjective inquiry into the sentencing judge's mental process.

*id.* at 26. The court concluded: "We see the Government's characterization [of the defendant as a major figure in organized crime] as a transparent effort to influence the severity of [the defendant's] sentence. Only a stubbornly literal mind could refuse to regard the Government's commentary as communicating a position on sentencing." *Id.* at 26; *see Bowler, supra* at 855 (apparent failure to consider mitigating circumstances in recommending sentence violated plea agreement); *Brown, supra* at 377–78 (halfhearted presentation of agreed recommendation of three-year sentence violated plea agreement).

▇ In the present case, the government did not directly violate its promise "not to oppose" a recommendation of "a substantial suspended sentence" and the placement of appellant in "a residential drug program." In context, however, as in *Crusco, supra*, the government did not live up to its bargain. During the exchange between the court and defense counsel over the wisdom of putting appellant in a drug program instead of prison, the court stated it was "not confident that the Second Genesis Program can impede the use and abuse which consistently brings him here, in the Community setting." The court then asked the Assistant United States Attorney if he wished to make a statement. The immediate response was: "Yes, Your Honor. In view of the plea agreement, the Government does not oppose this drug rehabilitation program, if the Court so decided at sentence. However, the Government is concerned with what the Court said, that he has [gone] through so many programs."

The clear import of the prosecutor's statement was that the government had the same concern as the court (*i. e.*, that a drug rehabilitation program would fail), but that he could say no more because he was bound by the plea agreement. The statement implied that, but for the plea agreement, the government would be recommending a period of incarceration. Although the prosecutor formally withdrew his statement after defense counsel objected to it, that perfunctory gesture alone could not cure the breach. In any event, the prosecutor did not recast the government's position when he followed withdrawal of his opening comment with the longer statement (quoted earlier) outlining the serious nature of appellant's conduct and appellant's "knowledge of the criminal system." To the contrary, this second statement reinforced the implication, originally conveyed, that the government favored incarceration.

The trial court's ruling that everything the prosecutor said was "objectively relevant" to one aspect of the agreement, namely the length of appellant's suspended sentence, ignores the context of the prosecutor's second statement. Having initially made a statement that violated the agreement—and retracted it only after defense objection—the prosecutor could have rectified that breach, and thus saved the situation, only by explicitly basing any further comment on a proper subject of allocution, here the length of a suspended sentence. The prosecutor, however, at no point mentioned a suspended sentence during allocution. Under the circumstances, therefore, his statements cannot be understood—as they must for the government to prevail—as a response solely to that issue.

In an effort to distinguish other cases, the government argues that it promised only "not to oppose" the defense's recommendations; it did not promise "not to take a position on sentencing," *Crusco, supra* at 25, or affirmatively to "make a *recommendation* on sentencing," *Brown, supra* at 377 (emphasis in original). The government accordingly maintains that it reserved sufficient room for its allocution about appellant's background.

We disagree. Such hardhitting allocution, without limitation to the proper length of a suspended sentence, was contrary to appellant's reasonable expectation that the government had promised not to undercut his effort for a suspended sentence and probation. *See Crusco, supra* at 26; *Brown, supra* at 378; *Ewing, supra* at 1143; *compare Braxton, supra* at 388 (government's agreement to waive allocution at sentencing did not preclude opposition to motion to

reduce sentence). Although we recognize literal distinctions between a promise not to oppose a particular sentence and a promise to make an affirmative recommendation or to take no position at all, we believe the distinctions are meaningless in the present context. By implying the government's support for incarceration, then simply saying, after objection, "I'll withdraw that," and then straightaway speaking at length about appellant's criminal intent and background without expressly limiting his remarks to the proper length of a suspended sentence, the prosecutor in effect reaffirmed his support for incarceration.

The government itself candidly admitted in its opposition to appellant's post-trial motion for reduction of sentence that "a reading of the transcript raises the possibility that the Court could have read into the Assistant United States Attorney's remarks a disapproval of the suspended sentence option." That possibility was real. The government accordingly failed in its duty to comply strictly with the terms of its agreement. *See Bowler, supra* at 853–54; *Crusco, supra* at 26; *Brown, supra* at 378; *Correale, supra* at 947.

### III.

■ The government's breach of a plea agreement as to sentencing may be remedied either by ordering resentencing by a different judge or, when appropriate, by allowing the defendant to withdraw the plea. *Santobello, supra,* 404 U.S. at 262–63, 92 S.Ct. at 498–499. Both appellant and the government express a preference for the first, less drastic remedy. Accordingly, we reverse the sentencing order and remand for resentencing by a different judge.[3]

*So ordered.*

3. Appellant, accordingly, returns to his status immediately prior to sentencing. We note that appellant was held in lieu of meeting a $10,000 bond pending sentencing. We leave it to the court, in its discretion, to invoke D.C.Code 1973, § 23–1325(b), which provides:

A person who has been convicted of an offense and is awaiting sentence shall be detained unless the judicial officer finds by clear and convincing evidence that he is not likely to flee or pose a danger to any other person or to the property of others. Upon such finding, the judicial officer shall treat

HARRIS, Associate Judge, dissenting:

While it is axiomatic that the government has a duty to fulfill its promises in a plea bargain, I disagree with the majority's conclusion that the government fell impermissibly short of the promise it made here. Accordingly, I respectfully dissent.

### I

The pertinent portion of the bargain struck by appellant with the government contained the latter's promise that it would "not oppose a substantial suspended sentence in lieu of incarceration and that [it] would not oppose a residential drug program." After the court voiced its concern with appellant's earlier attempts at rehabilitation and his subsequent returns to drug use, it asked counsel for appellant whether he had "considered that matter" and, if so, to respond thereto.[1] Defense counsel stated that he could not guarantee appellant's success in Second Genesis, but noted that the program is not "loosely run" and that, faced with a substantial prison term should he fail, appellant would be motivated to do well.

The court then requested comments from the prosecutor; obviously he had an obligation to respond. He first stated: "In view of the plea agreement, the Government does not oppose this drug rehabilitation program, if the Court so decided at sentence. However, the Government is concerned with what the Court said, that he has [gone] through so many programs." When defense counsel objected, the prosecutor withdrew that last remark. He then proceeded

the person in accordance with the provisions of section 23–1321 [release in noncapital cases prior to trial].

1. The presentence report which was before the trial court noted appellant's multiple prior convictions and drug problems over a period of 25 years, and observed that he had "failed on previous NARA programs, and supervised releases of various kinds." The report nonetheless recommended probation, with involvement in Second Genesis.

to allocute further as quoted in the majority opinion.

I think it is obvious that the prosecutor's remarks were addressed—and quite properly so—to the length of appellant's suspended sentence, and did not constitute any attempt on the part of the government to induce incarceration in violation of the plea agreement. The prosecutor had stated explicitly that the government did not oppose probation with participation in a drug rehabilitation program. He then went on to address the second component of the plea agreement, namely, that the government would not oppose a substantial suspended sentence for appellant in lieu of incarceration. That these remarks were so perceived by appellant and his attorney is clear. Defense counsel neither objected to the prosecutor's further comments—although, as noted, he had objected to the earlier remark—nor did he move to withdraw appellant's guilty plea. It is utterly simplistic to conclude, as does the majority, that the trial court was incapable of comprehending that the prosecutor's comments related to the length of appellant's suspended sentence (that is, that the sentence should be substantial). The entire plea agreement was before the experienced and able trial judge; that judge should be credited with having the sense to have understood it.

## II

With respect to the prosecutor's objected-to (and expressly withdrawn) comment voicing concern with appellant's past failures at drug rehabilitation, I cannot agree that the government's promise not to oppose probation was thereby broken. The government did not promise to recommend a specific disposition. Otherwise, it might have been reasonable to expect that "the government would *strongly* recommend the agreed to sentence," *United States v. Grandinetti,* 564 F.2d 723, 726 (5th Cir. 1977), and to so recommend "with some degree of advocacy." *United States v. Brown,* 500 F.2d 375, 377 (4th Cir. 1974). Nor did the government promise not to oppose probation and then turn around and "argue[ ]

strongly in opposition to" it, as occurred in *United States v. Ewing,* 480 F.2d 1141, 1142 (5th Cir. 1973). In a similar case, *United States v. Crusco,* 536 F.2d 21 (3d Cir. 1976), the prosecutor promised to take no position at sentencing in exchange for the defendant's guilty plea. What he thereafter did was to portray the defendant "as a major figure in organized crime who would endanger the community if he were on the streets." *Id.,* at 26. The prosecutor's comments thus "suggested the imprisonment of the defendant in the face of his broad commitment to take no position whatsoever." *United States v. Miller,* 565 F.2d 1273, 1275 (3d Cir. 1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). In *Miller,* the court which had authored *Crusco* limited its application, noting the significant difference between promising to take no position at all, a promise which requires silence, and promising to make no recommendation while reserving the right to comment on the severity of the sentence—as occurred in the instant case. Said the court in *Miller*: "[T]he crucial holding of *Crusco* [is] that the Government will be held only to what it has promised." *Id.* Here, the government explicitly stated to the court— in accord with its promise to appellant— that, in spite of its reservations, it did not oppose probation. The government's expression of concern with appellant's past failures at rehabilitation was in direct response to the trial court's inquiry on the matter and merely echoed the concern which already had been expressed by the trial court and by counsel for appellant, and which later was conveyed by appellant himself. The prosecutor provided no information to the court which the court did not already have before it. The prosecutor did not argue in opposition to probation, and he had no affirmative obligation to argue in favor of it. By promising not to oppose a substantial suspended sentence, the government did not, as in *Crusco,* "g[i]ve up its right to fair comment as to the severity of the sentence." *Id.* It was proper, therefore, to express concern over appellant's willingness to cooperate in a drug rehabilitation program in an effort to induce the

court to back up such a program with the possibility of a substantial prison term.

The trial judge carefully considered the exact arguments now advanced by appellant when she denied the motions to modify sentence. Her three-page written order stated in part:

4. The alleged breach of the plea agreement does not provide a basis for modification of the sentence.

a. Defendant was not promised a suspended sentence with a community-based drug program during the plea negotiations.

b. The remedy for a breach of plea agreement lies in 23 D.C.Code 110 (1973 Ed.), but the Court notes that:

(1) At the time the plea was taken on October 25, 1978, the only sentence representations were the Government's agreement not to oppose a substantial suspended sentence with a residential drug program. Other allocution was reserved. Transcript of Proceedings, October 25, 1978.

(2) At the time of sentencing on December 6, 1978, the Government did not have an affirmative obligation to recommend or support a suspended sentence with a drug program. Its only duty was not to oppose such a sentence. Cf., *Snowden v. State*, [33 Md.App. 659] 365 A.2d 321 (Md.Ct.Spec.App.1976).

(3) The Government did not violate the letter or the spirit of the plea agreement by stating factors unfavorable to defendant at allocution. The factors cited by the Government were objectively relevant to the length of the suspended sentence and would appear to be consistent with its agreement. *Correale v. United States,* 479 F.2d 944 (1st Cir. 1973).

So wrote the trial judge whom the majority appears to fear was influenced impermissibly by the prosecutor's remarks.[2] I find reversal here to be both unwarranted and a pointless drain on limited judicial resources.[3]

---

2. My colleagues' reliance upon out-of-context quotations from *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (*ante* at 618, n.2), is quite misplaced. In *Santobello,* a prosecutor as part of a plea bargain "agreed to make no recommendation as to the sentence." *Id.,* at 258, 92 S.Ct. at 497. When sentencing occurred some time later, a successor prosecutor not only recommended the maximum imprisonment, but also "cited [Santobello's] criminal record and alleged links with organized crime." *Id.,* at 259, 92 S.Ct. at 497. That, of course, is a far cry from what occurred in this case.

3. There also is a practical concern on my part with the efficacy of the relief ordered by the majority. Whichever new judge is assigned this case for resentencing will be aware of the content of the court's opinion, which, of course, includes the supposedly fatal remarks of the original prosecutor. Certainly it is not our role to put blinders on the trial court; equally certainly it is not our role to inhibit the trial court's best exercise of its informed discretion in the sentencing process.