**In the Matter of C.S. McP.**

**No. 85-370.**

District of Columbia Court of Appeals.

Argued March 20, 1986.
Decided Sept. 2, 1986.

Barbara E. Sosnick, Washington, D.C., appointed by the court, for appellant.

Michele Giuliani, Asst. Corp. Counsel, for appellee; with whom John H. Suda, Acting Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., were on the brief.

Before FERREN, TERRY and ROGERS, Associate Judges.

FERREN, Associate Judge.

Appellant, a juvenile, pleaded guilty to simple assault. After a dispositional hearing, the court placed him on probation for one year. Before disposition, but after adjudication, appellant filed a motion to dismiss for social reasons, which the court denied. Appellant contends the govern-

ment violated its plea agreement to waive allocution when it opposed his motion to dismiss. Appellant also asserts the court abused its discretion in denying his motion to dismiss. The government replies that the court had no authority to dismiss a petition after an adjudication of guilt, and thus that its opposition to dismissal, essentially making that point, did not violate its agreement not to allocute. We conclude that the court has authority under Super. Ct.Juv.R. 48(b) to dismiss a delinquency petition at the dispositional hearing, after an adjudication based on a finding or a plea. We further conclude that, although the government did not violate its agreement by arguing the issue of the court's authority to dismiss, the government did violate the agreement by going further to address the merits, arguing that neither appellant's interests nor the interests of justice would be served by dismissing the petition. Accordingly, we must reverse and remand for a new disposition by a different judge.

## I.

On June 28, 1984, the government filed a delinquency petition against appellant, who was then fourteen years old, alleging that he had assaulted another with a deadly weapon (a baseball bat), D.C. Code § 22–502 (1981), and that he was in need of care and rehabilitation. In exchange for the government's promise to waive allocution and step-back unless appellant was arrest-ed again, appellant pleaded guilty to simple assault, D.C.Code § 22–504 (1981). After the government's proffer,[1] the court accepted the guilty plea. At adjudication, the court did not explicitly find appellant in need of care or rehabilitation, but the court did order him to stay in the custody and supervision of his aunt, to obey a 9 p.m. curfew, to attend school regularly, and to stay away from the complaining witness.

During the luncheon recess before his scheduled dispositional hearing, appellant filed a Memorandum in Aid of Disposition and a Motion to Dismiss for Social Reasons. Appellant argued that the court should dismiss the petition under Super.Ct. Juv.R. 48(b) because this was appellant's first arrest, the incident was essentially a school yard scuffle,[2] appellant had superior intellectual potential with a tested IQ of 131,[3] he had contacted the Black Student Fund to obtain a scholarship to attend private school, and his opportunity for admission to a private school would be jeopardized by an adjudication of delinquency. Appellant urged that the broad rehabilitative purposes of juvenile justice could best be served by discontinuing the proceedings. Appellant added that, because the government had waived allocution, the government had waived the right to object to appellant's motion.

The government did not appear at appellant's scheduled dispositional hearing. The judge advised appellant's counsel that he would not dismiss the petition without the

1. The government proffered:
   If this case were to go to trial, the Government would produce a complaining witness whose testimony would be that on June 18th, 1984, at approximately 9:10 p.m., after returning from a school field trip, while at Hamilton Junior High School at 6th and Brentwood Parkway, North East, he was surrounded by a group of several young men who beat him about the head and body with their fist[s.]. The Government would further produce several witnesses who would testify that the Respondent was one of the individuals that did beat him about the head and body on that occasion. The Government would further produce a written statement of the Respondent, admitting that in fact he was one of the young men that did beat him about the head and the face. These events occurred in the District of Columbia.

2. The baseball bat was a miniature souvenir bat.

3. Appellant attached to his motion a psychological report verifying his tested superior intellectual potential and creative energy. The court also evaluated his personality, indicating that he felt social alienation, isolation, loneliness, moderate depression and low self esteem. The psychologist concluded that appellant had a lot of promise and recommended therapeutic intervention and more rigorous intellectual stimulation. The psychologist also offered his counseling services to appellant on a pro bono basis.

attendance . of government counsel. Accordingly, over appellant's objection that ·any government opposition to the motion to dismiss would be tantamount to allocution and hence a breach of the plea agreement, the judge ordered the government to be present at a rescheduled disposition hearing and to advise him of the government's position on appellant's motion. The judge indicated, however, that the government could decline, on the basis of the plea agreement, to object to the motion.

The government filed an opposition to appellant's motion. It argued that: (1) by waiving allocution, the government did not agree to waive its right to respond to appellant's motion to dismiss; (2) while the court lawfully might terminate its jurisdiction by refusing to impose any of the dispositions prescribed by D.C.Code § 16–2320(c) (1981), dismissal of the petition itself, purporting to erase an adjudication of guilt, was not legally permissible because it would deprive the court, in case of future need, of "a true representation of respondent's prior court contacts"; and (3) in any event, dismissal was not in the best interests of appellant or of the public.

Appellant filed a reply, arguing that: (1) the government's opposition was a breach of the plea agreement waiving allocution; (2) the court had authority to dismiss the petition at the dispositional hearing; and (3) dismissal would serve the best interests of appellant and of the public.

At the hearing, the court ruled that, by waiving allocution at disposition, the government did not waive its right to be heard on the motion to dismiss the petition. The government, however, relying on its written opposition, elected not to comment on dispositional alternatives. The court then stated that, in selecting a disposition, it would not consider the government's third argument (on the merits) in its opposition to the motion to dismiss.

Although the court wondered whether it had authority to dismiss the petition under Rule 48(b) at the late stage of disposition hearing, the court explicitly assumed it had such authority and exercised its discretion to deny the motion, finding it would not be "in the interest of [appellant] or the interest of justice to dismiss this petition for social reasons." *See* Super.Ct.Juv.R. 48(b). On final disposition, the court placed appellant on probation for one year.[4]

## II.

On appeal, the parties renew the arguments presented to the trial court. Analytically, we begin with the question whether the trial court has authority to dismiss a juvenile petition at the dispositional hearing after adjudication (whether by finding or plea). Once that is resolved, we shall be in a position to evaluate whether the government, in opposing appellant's motion to dismiss, violated its agreement to waive allocution and, if so, whether appellant has a remedy.

### A.

■ We conclude that the Family Division has the authority under Super.Ct. Juv.R. 48(b) to dismiss a delinquency petition at a dispositional hearing if the court finds that a child who committed a "delinquent act," D.C.Code § 16–2301(7) (1981), is, nonetheless, not "in need of care and rehabilitation," *id.* § 16–2301(6), and thus is not a "delinquent child." *Id.; see id.* § 16–2320(c) (prescribes dispositions for "child ... found to be delinquent").

Super.Ct.Juv. 48(b) provides:

*By the Division.* Even though the Division may have [acquired] jurisdiction, *it may at any time during or at the conclusion of any hearing dismiss a petition and terminate the proceedings relating to the child, if such action is in the interests of justice and the welfare of the child.* The reasons for such dis-

---

**4.** Probation included the special conditions that appellant attend school regularly, obey all school rules and regulations, and observe a 9 p.m. curfew on weekdays and an 11 p.m. curfew on weekends. Appellant agreed to continue with his counseling sessions voluntarily.

missal shall be set forth upon request of the Corporation Counsel. Once a fact-finding hearing has begun, any dismissal is with prejudice to any further proceedings on the subject. Unnecessary delay in the filing of a petition or in bringing a respondent to a hearing or disposition is a factor to be considered by the Division when deciding whether to dismiss a petition. [Emphasis added.]

The comment to this rule states, "The first 2 sentences of section (b) give the judge broad discretion to dismiss cases inappropriate for [Family] Division action and refer them to appropriate social agencies."

The first sentence of Rule 48(b) is essentially identical to Model Rule 28, Council of Judges, National Council on Crime and Delinquency, *Model Rules for Juvenile Courts* at 60 (1969). Model Rule 28 recognizes the authority to dismiss the petition "[a]t any point in the juvenile court process ... [to] prevent[ ] the child from unnecessarily acquiring a record of adjudication." *Id.* comment; quoted in *In re M.C.F.*, 293 A.2d 874, 875–76 n. 4 (D.C.1972).[5]

This concept of dismissal of the petition at the dispositional hearing is not precluded by statute or other applicable rules. D.C. Code § 16–2320(c)(1) (1981), which incorporates an array of alternative dispositions not including dismissal, also incorporates

*id.* § 16–2320(a)(5): "The [Family] Division may make *such other disposition as is not prohibited by law* and as the Division deems to be the best interests of the child." (Emphasis added.) Furthermore, Super.Ct. Juv.R. 32(b) also leaves open the possibility of dismissal after adjudication of guilt, for its provides: "If the respondent is found not guilty *or for any other reason* is entitled to be discharged, judgment shall be entered accordingly." (Emphasis added.)

The appropriateness of dismissal of the petition at disposition is easily demonstrated by reference to the statute defining a "delinquent child." A child is deemed "delinquent," and thus a candidate for disposition, only if he or she "has committed a delinquent act *and* is in need of care or rehabilitation." D.C.Code § 16–2301(6) (1981) (emphasis added); *see id.* § 16–2320(c). Thus, "there are two elements in a finding of delinquency." *M.C.F.*, 293 A.2d at 877. Whether a juvenile is in need of care or rehabilitation is determined at disposition, after an adjudication that the juvenile committed the delinquent act alleged in the petition. *Id.;* Super Ct.Juv.R. 31(a) ("findings of fact with respect to the need for care or rehabilitation shall be made at the dispositional hearing"). While commission of a delinquent act creates a

**5.** Similarly, Model Rule 32 is intended to allow for dismissal as an alternative available at disposition. It provides, in relevant part, simply that "[a]fter the dispositional hearing, the court shall enter an appropriate decree of disposition." But the comment to Rule 32 elaborates: "If the court dismisses the petition after the dispositional hearing (the equivalent of imposing a sentence of unconditional discharge), this disposition should likewise be entered in the record." Council of Judges, National Council on Crime and Delinquency, *Model Rules for Juvenile Courts* at 70 (1969) (parenthesis in original).

This concept of dismissal at, or even after, the disposition is not found in the more recent American Bar Association, Institute of Judicial Administration, *Juvenile Justice Standards* (1980). Instead, the ABA Standards simply provide for dismissal without reference to timing. Specifically, they permit discretionary dismissals where parental sanctions are more appropriate or where the juvenile's conduct should

not be regarded as delinquent. *Id., Standards Relating to Juvenile Delinquency and Sanctions* § 1.3 at 13. These *Standards* also allow, in extraordinary cases, for suspension of the adjudication on the condition that the juvenile behave properly, *id., Standards Relating to Adjudication,* § 5.2 at 64, even though the most lenient, specific dispositional alternative, "nominal" disposition, does not explicitly authorize dismissal. *Id. Standards Relating to Juvenile Delinquency and Sanctions* § 4.1 at 38; *Standards Relating to Dispositions* § 3.1 at 39. When considered together, therefore, the ABA Standards do not appear to contemplate an outright dismissal of a petition after adjudication.

Because the language of Super.Ct.Juv.R. 48(b) is found in the Model Rules but not in the ABA Standards, we conclude that the approach of the Model Rules on this particular issue—authorizing dismissal of the petition at disposition—has been incorporated into the law of this jurisdiction.

presumption that the juvenile is in need of care or rehabilitation, the juvenile may rebut that presumption at the dispositional hearing. *M.C.F.*, 293 A.2d at 877; D.C. Code § 16–2317(c) (1981).

If the juvenile does rebut the presumption, he or she is not in need of care or rehabilitation and thus, by definition, is not a delinquent child subject to disposition. D.C.Code §§ 16–2301(6), 16–2320(c). Where the government, then, fails to prove the second obligatory allegation of a delinquency petition, *M.C.F.*, 293 A.2d at 877, none of the dispositions specifically authorized by D.C.Code § 16–2320(c) is appropriate. *See* D.C.Code § 16–2317 (d) (1981).[6] The court, accordingly, may dismiss the petition at disposition if the juvenile has rebutted the presumption that he or she is in need of care or rehabilitation and thereby has demonstrated that dismissal "is in the interests of justice and the welfare of the child." Super.Ct.Juv.R. 48(b); *see District of Columbia v. D.E.P.*, 311 A.2d 831, 832 (D.C.1973).

If, however, the juvenile found to have committed a delinquent act fails to rebut the presumption that he or she is in need of care or rehabilitation, the court may order a disposition authorized by D.C.Code § 16–2320(c) (1981), including, for example, confinement, parental or other protective supervision, or a nominal disposition of reprimand and unconditional release, without dismissing the petition. D.C.Code § 16–2320(c)(1) (1981) (incorporating *id.* § 16–2320(a)(5)); *see* American Bar Association, Institute of Judicial Administration, *Juvenile Justice Standards Relating to Dispositions*, § 3.1 at 39–40 (1979).

In sum, the adjudication-disposition scheme leaves a critical element of delin-

quency for determination at the disposition hearing. For this reason, therefore, dismissal of the petition at disposition is not too late, since a child found not in need of care or rehabilitation is by definition not delinquent.

**B.**

In this case, the trial court assumed, without deciding, that it had authority to dismiss the petition at disposition but ruled that dismissal would not be in the interests of justice or of appellant. Super.Ct.Juv.R. 48(b). The court accordingly ordered probation. This ruling, however, came after the court considered the government's opposition to the motion to dismiss. We therefore must decide whether the government violated its plea agreement not to allocute and thereby tainted the court's disposition.

In the adult criminal context, a prosecutor's allocution means "to address the court and to make a recommendation ... on the sentence to be imposed and to present information in support of [the] recommendation." D.C.Code § 23–103 (1981). Similarly, allocution in the juvenile context means to make a recommendation and/or to provide information as to what disposition is appropriate for a juvenile found guilty of a delinquent act. Adult sentencing practice and procedure, however, is different from a juvenile disposition. The juvenile justice system "is not a criminal system. More stress is placed on the welfare and rehabilitation of the individual child...." *M.C.F.*, 293 A.2d at 877 (citation omitted).[7] Consequently, allocution at a juvenile disposition assumes a somewhat broader role than allocution at sentencing. Specifically, before counsel in a juvenile

---

**6.** D.C.Code § 16–2317(d) (1981) provides: "If the [Family] Division finds that the child is not in need of care or rehabilitation it shall terminate the proceedings and discharge the child from detention, shelter care, or other restriction previously ordered."

**7.** We are therefore unpersuaded by the government's argument, by analogy, that since dismissal is not available in adult proceedings after a

finding or plea of guilt, dismissal is not available at juvenile disposition after an adjudication or plea of guilt. Furthermore, that analogy does not account for the fact that one of the two elements required for a finding of delinquency—need for care or rehabilitation—is addressed for the first time at the dispositional hearing.

case may allocate as to the appropriate disposition, they must address whether the adjudicated juvenile is "in need of care or rehabilitation," *i.e.*, whether a juvenile found guilty of a "delinquent act" should, under all the circumstances, be found a "delinquent." D.C.Code § 16–2301(6) (1981). Only if the court so finds, and does not dismiss, does the second purpose of allocution—a recommendation for disposition short of dismissal—come into play.

On appeal, the government essentially advances the same three arguments presented to the trial court in opposition to the motion to dismiss for social reasons: (1) by agreeing to waive allocution, the government did not agree to waive its right to oppose appellant's motion to dismiss; (2) Super.Ct.Juv.R. 48 does not confer authority to dismiss the petition at disposition, and (3) dismissal was not in the best interests of appellant or of the public. The government's first two arguments were not allocution. The first addressed the meaning of the plea agreement. The second addressed the jurisdiction of the Family Division. These were interrelated, purely legal arguments addressed to an unresolved question of the authority of the court and a corresponding limitation on the government's intentions when it agreed not to allocute. These arguments were not related to the factual determination of what disposition, if any, would serve appellant's and the public's best interests.

The government's third argument, however, was allocution. The government repeated the nature of the offense, cited the probation officer's recommendation that appellant be placed on probation, and argued that, because appellant's behavior had improved since the court's intervention, he

and the public would benefit from the court's continued supervision. The government, therefore, by arguing that appellant was in need of care and rehabilitation, violated its plea agreement not to allocute.

■ We are not persuaded by the government's argument that it did not agree to remain silent on the merits in the face of a motion to dismiss, since dismissal would nullify appellant's agreement to plead guilty and thus would eliminate any benefit to the government from its agreement. To the contrary, by appellant's agreement to enter the plea, the government gained an adjudication of guilt without the costs and risks of a factfinding hearing. Moreover, the government gained the correlative presumption that this juvenile was in need of care and rehabilitation. *M.C.F.*, 293 A.2d at 877. On the other hand, through the government's agreement to waive allocution, appellant gained an opportunity to rebut this presumption, unaffected by information or argument the government might offer to the contrary.[8] Accordingly, we perceive consideration on both sides of the plea agreement and conclude that the government violated that agreement by making its third argument in opposition to the motion to dismiss.

### C.

"If the government violates its [plea] bargain, ... the court must remand the case for resentencing or, in appropriate cases, to allow withdrawal of the defendant's plea." *White v. United States*, 425 A.2d 616, 618 (D.C.1980) (citing *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (other citations omitted)).[9] Appellant has not re-

---

8. We note that it would be impossible to permit the government to comment on whether appellant is in need of care or rehabilitation without also permitting the government to comment on which disposition is appropriate, for to argue that appellant is in need of care and rehabilitation inevitably provides the court with information as to which disposition is appropriate.

9. It is irrelevant that, in choosing a disposition, the court stated it would not consider the government's third argument in opposition to dismissal. "[I]t is irrelevant that the government's remarks may not have influenced the sentencing judge.... [T]he judge's reaction to the allocution is not germane here." *White v. United States*, 425 A.2d 616, 618 & n. 2 (D.C. 1980) (citing *Santobello v. New York*, 404 U.S.

quested an opportunity to withdraw his plea. *See id.* at 620. Accordingly, we reverse and remand for a new disposition before a different judge—the remedy prescribed in *Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 498–99, and followed in *White,* 425 A.2d at 620, for cases in which withdrawal of the plea is not sought. "We emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499.

■ On remand, the court should determine whether appellant "is in need of care or rehabilitation." D.C.Code § 16–2301(6) (1981). If he is not, the court should remove the record of probation and may, at its discretion, grant a motion to dismiss the petition for social reasons pursuant to Super.Ct.Juv.R. 48(b).[10] If the court finds appellant is in need of care or rehabilitation, the court should select an appropriate disposition. In that case, appellant should receive credit for the probation served, but the prior disposition of probation should be removed from his record.

*So ordered.*

TERRY, Associate Judge, concurring:

I readily join in Judge Ferren's opinion for the court. I add this short concurrence only to emphasize that, as I understand this case, our holding is necessarily limited to juvenile proceedings because it is based on statutes and rules applicable only to juvenile matters. In particular, no one should read our opinion as saying anything

257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971)).

**10.** Theoretically, it may appear a finding that appellant is not in need of care or rehabilitation, and thus is not a delinquent child, would lead automatically to dismissal of the petition at the dispositional hearing, since by definition he would not be "delinquent." We conclude, however, that the better approach is to regard dismissal in such circumstances as a matter of trial court discretion under Super.Ct.Juv.R. 48. It is not inconsistent to find that a juvenile is not a "delinquent child," but to keep of record, D.C.

at all about adult criminal proceedings (except for the brief discussion of the *Santobello* and *White* cases in part II(C)). Any attempt to apply what we have said here to an adult criminal case would be entirely unwarranted.

Code § 16–2331(a)(5) (1981), the finding that he or she committed a "delinquent act." In case the juvenile commits an offense in the future, that record could aid the court in fashioning an appropriate disposition. On the other hand, the court may perceive in certain circumstances that a juvenile record of a "delinquent act" would not be "in the interests of justice and the welfare of the child." Super.Ct.Juv.R. 48. In any event, of course, the finding of a "delinquent act" would be subject to the confidentiality provisions. D.C.Code § 16–2331(b) (1981); *see id.,* § 16–2318.