# District of Columbia
# Court of Appeals

**No. 15-CF-0051**

PAUL MICKENS,

Appellant,



FILED

MAR **10** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CF2-5709-14**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: WASHINGTON, *Chief Judge*; THOMPSON, *Associate Judge;* and FERREN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of conviction is reversed, and the case is remanded to the original sentencing judge to determine whether appellant wishes to withdraw his plea and, if so, whether a motion to do so should be granted. If appellant elects not to pursue withdrawal, or he files a motion to withdraw the plea which the original judge denies, the case shall be transferred to another judge for resentencing after appropriate allocutions.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 10, 2016.

Opinion by Senior Judge John M. Ferren.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-0051

PAUL MICKENS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 3/10/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior
Court of the District of Columbia
(CF2-5709-14)

(Hon. William M. Jackson, Trial Judge)

(Submitted February 2, 2016                    Decided March 10, 2016)

*Mindy A. Daniels* was on the brief for appellant.

*Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *Jeffrey S. Nestler*, and *Daniel J. Lenerz*, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: This case presents the following questions: whether the government violated its plea agreement with appellant, and, if so, whether the case should be remanded for resentencing by a different judge, preceded, if

appropriate, by permitting appellant to request withdrawal of his plea. Answering these questions substantially in the affirmative, we reverse and remand.

**I.**

On April 1, 2014, Metropolitan Police Department (MPD) officers watched appellant, Paul Mickens, making what they perceived to be several crack cocaine transactions outside of 355 Ridge Road, S.E. Minutes later, the officers attempted to arrest Mickens, who had retreated to an apartment at that address and taken off most of his clothes, leaving on only his T-shirt, underwear, and socks. Mickens got away from the police, however, and fled on foot until he was caught some two blocks away in another apartment, where he had unlawfully "barged through the front door." The officers walked Mickens back to the Ridge Road apartment to get his clothes—the same clothes he had been wearing while the officers watched him making the sales. In the pocket of the jacket, the police discovered six, small, ziplock baggies of crack cocaine. Mickens was charged with assaulting a police officer,[1] burglary,[2] four counts of distribution of PCP,[3] two counts of distribution

---

[1] *See* D.C. Code § 22-405 (b) (2012 Repl.).

[2] *See id*. at § 22-801 (a).

[3] *See id*. at § 48-904.01 (a)(1).

of cocaine,[4] and one count of possession with intent to distribute (PWID).[5] Mickens entered a plea agreement with the government in which he would plead guilty to all the charges (with the burglary reduced to unlawful entry),[6] and the government would waive all enhancements, other than the OCDR (offenses committed during release) enhancement, and would allocute for a sentence within the District of Columbia Sentencing Commission's Voluntary Sentencing Guidelines.[7]

During the sentencing proceeding, the government asked for the PWID sentence to run consecutively to the sentences on the other drug charges, contending that the PWID was not part of the same "event" encompassing the other charges.[8] Defense counsel objected that this request during allocution was a violation of the plea agreement because, under the agreed-upon Guidelines, all the

---

[4] *See id.*

[5] *See id.*

[6] *See id.* at § 22-3302.

[7] *See* D.C. Voluntary Sentencing Guidelines (June 30, 2014).

[8] Under the Voluntary Sentencing Guidelines § 6.3, for multiple non-violent offenses that occur during more than one event, the trial court has discretion to impose sentences that are either consecutive or concurrent. For multiple non-violent offenses that occur during a "single event," however, § 6.2, of the Guidelines provides that the sentences "must be imposed concurrently."

non-violent drug charges arose from a "single event," within the meaning of the Guidelines, and thus all sentences must run concurrently.[9] Defense counsel, accordingly, asked the court for permission to confer with Mickens so that Mickens could reconsider his plea, and also asked that sentencing, in any event, be reassigned to another judge.

Denying these requests, the trial court proceeded to sentence Mickens as scheduled. Counsel for Mickens suggested a total of less than four years of incarceration, whereas the prosecutor asked for a total of twelve years premised on a consecutive sentence for PWID. Ultimately, the trial court limited the sentences for the non-violent drug offenses to concurrent terms, and sentenced Mickens to a total of forty-eight months plus the 360 days (reserved as an enhancement under the plea agreement) required to be served consecutively for the OCDR offense. Mickens filed a timely appeal.

---

[9] See *supra* note 8.

## II.

## A.

When determining whether a plea agreement has been violated, we construe its terms de novo[10] and apply the following rule:  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"[11]—failing which, the breach invites relief for the defense.

In *Santobello*, for example, the Supreme Court remanded the case for an appropriate remedy even though the Court had "no reason to doubt" that the sentencing judge was not influenced by the prosecutor's recommendation in breach of the plea agreement.[12]  In doing so, the Court left up to the state courts whether the ultimate remedy should be "resentenc[ing] by a different judge" or granting the defendant an "opportunity to withdraw his plea of guilty."[13]

---

[10]  *Johnson v. United States*, 30 A.3d 783, 787 (D.C. 2011).

[11]  *Id.* (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

[12]  *Santobello*, 404 U.S. at 262.

[13]  *Id.* at 262-63.

We tracked *Santobello* in *White*:[14]  "If the government violates its bargain, it is irrelevant that the government's remarks may not have influenced the sentencing judge; the court must remand the case for resentencing or, in appropriate cases, to allow withdrawal of the defendant's plea."[15]  We stressed that the government must strictly comply with its plea agreement, and that any ambiguity should be construed against the government.[16]

**B.**

Alleging the government's breach of the plea agreement, Mickens maintains that the trial court should have granted him a continuance in order to reconsider his plea, and, absent a request to withdraw it, should have transferred his case for resentencing by a different judge.  He argues, more specifically, that because his distribution and PWID charges were all part of a "single event," the government breached the plea agreement by allocuting for consecutive sentences totaling twelve years, in conflict with the Guidelines requirement of concurrent sentences for non-violent crimes when all the charges arise from a "single event."

---

[14] *White v. United States*, 425 A.2d 616, 618 (D.C. 1980).

[15] *Id.* (citing *Santobello*, 404 U.S. at 262).

[16] *Id.*

In response, the government argues that it did not breach the plea agreement. Moreover, even if there was a breach, says the government, Mickens suffered no harm because the trial court rejected the government's request for consecutive sentences and sentenced Mickens concurrently on the convictions for non-violent crimes.[17]

The government's first response—no breach—is premised on its contention that Mickens's PWID offense was an event altogether separate from the event during which the other offenses occurred, and thus was eligible for consecutive sentencing.[18] We cannot agree. Offenses are part of a "single event" if "they were committed at the same time or place, or have the same nucleus of facts."[19] It is true that the police officers, after observing several crack cocaine transactions

---

[17] In addition to responding to Mickens's arguments, the government raises its own issue on appeal, claiming an "illegal sentence" in the written commitment order because that sentence conflicts with the court's oral pronouncement, which the government says should prevail under our case law. The government asks us to make the requested correction. This argument is raised for the first time on appeal. Because an illegal sentence can be corrected "at any time," Super. Ct. Civ. R. 35 & 36, and requires ascertainment of facts, we leave it to the government to seek relief in the trial court, if needed. In light of our disposition vacating the sentences, however, it appears that the government's concern is moot.

[18] See *supra* note 8.

[19] *See* Voluntary Sentencing Guidelines § 7.10.

outside 355 Ridge Road, S.E., and interacting with Mickens inside an apartment there, did not discover the crack cocaine relied on for the PWID charge until they had arrested Mickens over two blocks away, and returned to the Ridge Road address, where they found the cocaine in the jacket that Mickens had abandoned there. Arguably, perhaps, the PWID charge did not satisfy the "same time and place" requirement for a "single event."[20] But we are easily convinced that, based initially on the free flow of relevant events during a very short time period, the PWID charge assuredly flowed from the "same nucleus of facts"[21] from which the other drug charges arose.

---

[20] See *supra* note 8. Under § 7.10 of the Guidelines, "offenses are part of a single event if they were committed at the same time or place, or have the same nucleus of facts. Offenses are part of multiple events if they were committed at different times and places or have a different nucleus of facts." The Guidelines offer the following examples:

> One event: Defendant robs a convenience store at gunpoint. As he is leaving, but still inside the store, he engages in a gun battle with a police officer who has the store under surveillance.

> Two events: Defendant robs a convenience store at gunpoint. He speeds away from the scene and is stopped for a traffic violation. He shoots at the police officer.

*Id*. at § 7.10. These examples reflect extremes that are not helpful here.

[21] See *supra* note 20.

Of particular significance, there was an evidentiary nexus here; the officers' observations of the cocaine transactions outside the Ridge Road address were relevant to proving that the crack cocaine found later in Mickens's jacket was packaged for distribution. The government, in fact, effectively acknowledged this nexus when it earlier opposed Mickens's motion to sever trial of the PWID charge from the others. The government argued then that all "the drug offenses are part of the same common scheme and are connected in time and place." The government cannot convincingly take both positions, first arguing that all charges comprise the same event, in order to have them tried together, and then, after obtaining a plea agreement, taking a contrary position at sentencing. If there is a consistency here, based on disparate legal rules, the government has not persuasively explained it.[22] In sum, all offenses at issue here arose from a single event, as understood from the

---

[22] The government argues that "whether the offenses were committed at the 'same' time and place," pursuant to § 7.10 of the Guidelines, see *supra* note 20, "is not the same question addressed by the government's opposition" to Mickens's motion to sever, which is whether, under Super. Ct. Crim. R. 8 (b), "the offenses were 'so closely connected in time and place that there is necessarily a substantial overlap in proof of the various crimes and it would be difficult to separate proof of one from the other.'" This distinction is too subtle to have meaning here, especially when, as noted above, proof of the cocaine transactions outside the Ridge Road address would help the government prove that the cocaine retrieved later from Mickens's jacket was likely packaged for distribution.

applicable Guidelines. But even if the situation were ambiguous, all ambiguity would cut in favor of Mickens's single event contention.[23]

Finally, the government proffers cases from several federal circuits announcing, in dicta, a "mitigating doctrine"[24] which each court finds inapplicable in the case before it, but available as a harmless error exception to *Santobello* in other cases where the breach of a plea agreement is merely "technical" or "immaterial," "minor" or "insubstantial,"[25] commonly making the breach easily

---

[23] *See White v. United States*, 425 A.2d 616, 618 (D.C. 1980) ("The court will construe any ambiguity against the government.").

[24] *United States v. Purser*, 747 F.3d 284, 292 (5th Cir. 2014) ("Most of our sister circuits have . . . rejected the use of a harmlessness inquiry in situations of a plea agreement breach where the error has been preserved. We do note that many of these circuits have adopted a *mitigating doctrine* that stands in some contrast to the no-harmlessness doctrine. Under this *mitigating doctrine*, there is no harmlessness inquiry only in cases where there is a material breach of the plea agreement. In other words, *minor breaches do not count*.") (emphasis added).

[25] *United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010) ("no relief . . . when the breach of the plea agreement is, in the court's view, *insubstantial, immaterial, technical –* in short, *minor –* or *cured on the spot* and . . . undeserving of substantial relief such as resentencing or withdrawal of a guilty plea") (emphasis added); *United States v. Vaval*, 404 F.3d 144, 155-56 (2d Cir. 2005) ("There is also a very limited exception to the need for a remedy for a plea agreement breach by the government where the violation is *so minor* that it does not cause the defendant to suffer any meaningful detriment"; in another case, no remedy was required for a "*technical violation*" of a plea agreement because "the sentence imposed 'did comport with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained.'"); *United States v.*

(continued . . .)

"curable."[26]  Even if we were to recognize such exceptions in this jurisdiction, however, we do not do so here, because the facts before us do not reflect a de minimis violation.

## C.

Having concluded that the government violated the plea agreement, we turn to the question of remedy.  The government argues that Mickens "received precisely what he had asked for at sentencing—a concurrent sentence on the PWID cocaine charge."  Therefore, says the government, the prosecutor's recommendation (in the sentencing judge's words) did not "control this Court's reasoning."  In short:  no prejudice, no remedy.

---

(. . . continued)

*Clark*, 55 F.3d 9, 14 (1st Cir. 1995) ("*[M]inor deviations* from the plea agreement will not mandate resentencing.  This is because *minor deviations* do not affect the consideration due the defendant under the plea agreement."); *see Purser*, *supra* note 24.

[26]  *Diaz-Jimenez*, 622 F.3d at 696 (proposing hypothetical that court could excuse as immaterial and curable, see *supra* note 25, in which prosecutor's mistaken breach is pointed out, and prosecutor responds, "I misremembered the plea agreement.  I agree unreservedly with the recommendation in the plea agreement. . . .  That sentence would in our opinion be sufficient; we do not think there is any need for a longer sentence."); *Vaval*, 404 F.3d at 155 (no relief from breach of plea agreement when breach "has been previously cured by specific performance[,]" for example, "at a post-sentencing Rule 35 hearing").

The government's first statement, however, is only partly true; Mickens had asked for concurrent sentences, but also for a total sentence lower than he received. The second statement, moreover, is irrelevant. In *Santobello*, the Supreme Court had "no reason to doubt" that "the prosecutor's recommendation did not influence" the sentencing judge, but the Court concluded nonetheless "that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case."[27] Similarly, as we said in *White*: if "the government violated its plea agreement[,] appellant's sentence cannot stand."[28] We must remedy the breach by remanding the case either to permit "resentencing by a different judge or, when appropriate, [to] allow[] the defendant to withdraw the plea."[29]

At a minimum, therefore, we must remand the case for resentencing by a different judge who becomes fully apprised of the plea agreement but is confronted only by allocution in compliance with it. To eliminate any possible prejudice, Mickens should have the opportunity to seek a sentence from a judge who has not been subjected to the government's argument for a consecutive sentence for PWID

---

[27] *Santobello*, 404 U.S. at 262; *accord White*, 425 A.2d at 618.

[28] *Id.*

[29] *Id.* at 620.

The question then becomes whether, before resentencing, Mickens should also receive the opportunity he requested to consider, and perhaps elect, withdrawal of his plea.

The government argues, in a footnote, that even if remand is required, Mickens should not be given the option to withdraw his guilty plea because he "abandoned that request below" when, after the court made clear that it was not bound by the government's sentencing recommendation, defense counsel "stated that he was prepared to go forward with sentencing." The government misconstrues the record. It is clear from the colloquy that defense counsel did not abandon his request to consider withdrawal of the plea. Rather, in light of the court's refusal to grant Mickens's request to transfer the case for sentencing by another judge, counsel was satisfied that he had adequately preserved the record on the plea withdrawal issue for appeal and agreed to move forward with sentencing.[30]

---

[30] The following is a transcription of the colloquy:

THE COURT: I'm not moving it to a different Judge. So –

MR. MCDONALD: In light of that, Your Honor, what I'm asking the Court to do is allow me to speak to Mr. Mickens to consider whether or not he should withdraw his plea based upon the Government's recommendation.

THE COURT: The Government's recommendation doesn't control this Court's sentencing. I'm the Sentencing Judge.

(continued . . .)

We, too, are satisfied that the issue is preserved. Whether Mickens should be given the opportunity to elect to withdraw his plea, however, should be answered, in the first instance, by the trial court, not this court.

_____

(. . . continued)

MR. MCDONALD: I understand that, Your Honor.

THE COURT: Uh-huh. This is not, you know –

MR. MCDONALD: But he has a right to the benefit of this plea agreement, as well.

THE COURT: He very well may. But the Government doesn't control what this Court does for sentencing. The Government asked for 12 years on the drug case, essentially.

MR. MCDONALD: I, I, I –

THE COURT: Multiple drug case.

MR. MCDONALD: I understand that.
THE COURT: People got shot and don't get 12 years in this jurisdiction. So.

MR. MCDONALD: I understand that, Your Honor. I think I sufficiently made my record. I'm prepared to go to sentencing.

THE COURT: All right.

MR. MCDONALD: Your Honor, I still maintain my objection, though.

THE COURT: All right. Noted.

It is not entirely clear whether Mickens is asking for the original sentencing judge or the successor judge to decide the withdrawal issue. Mickens, however, has offered no objection to the original judge's making the decision. Thus, for reasons of judicial economy, we conclude that—absent a taint of some kind—the original judge should do so, as the judicial officer most familiar with the case when received upon remand.

Accordingly, we reverse the judgment of conviction and remand the case to the original sentencing judge to determine whether Mickens wishes to withdraw his plea and, if so, whether a motion to do so should be granted. If Mickens elects not to pursue withdrawal, or files a motion to withdraw the plea which the original judge denies, the case shall be transferred to another judge for resentencing after appropriate allocutions.

*So ordered.*