v.

**District of Columbia, Appellee.**

**Nos. 10–FS–112, 10–CT–649.**

District of Columbia Court of Appeals.

June 26, 2012.

BEFORE: THOMPSON and OBERLY, Associate Judges, and TERRY, Senior Judge.

■

**In re D.M.,**

**District of Columbia, Appellant.**

**No. 10–FS–579.**

District of Columbia Court of Appeals.

Argued Dec. 17, 2010.
Decided July 5, 2012.

John J. Woykovsky, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Irvin B. Nathan, Acting Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellant.

Kristen Henning, with whom Steven H. Goldblatt, Washington, and Kathy C. Chang, were on the brief., for D.M.

James Klein and Jaclyn S. Frankfurt were on the brief for amicus curiae Public Defender Service for the District of Columbia.

Before GLICKMAN, Associate Judge, RUIZ, Senior Judge,* and NEBEKER, Senior Judge.

RUIZ, Senior Judge:

This appeal presents an issue of first impression: the scope of the Superior Court's authority to terminate and dismiss a juvenile proceeding in Family Court once the juvenile has been found to have committed a delinquent act and in need of care or rehabilitation. In this case, D.M., a juvenile, pled involved to one count of misdemeanor theft in the Family Division of the Superior Court. The trial court found, at a dispositional proceeding, that D.M. was in need of care or rehabilitation, adju-

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Senior Judge on July 2, 2012.

dicated D.M. delinquent, and sentenced him to a six-month term of probation. Nearly six months later, a week before the period of his probation was to expire, D.M. filed a motion to dismiss the proceeding against him for social reasons. The trial court, finding that D.M. had behaved well during probation and was no longer in need of care or rehabilitation, granted the motion and dismissed the proceeding on the day the period of probation expired.

The District of Columbia has appealed, arguing that: (i) the trial court did not have authority to dismiss the proceeding once it had already adjudicated D.M. delinquent, and (ii) even if the trial court did have such authority, the dismissal of the proceeding did not have the effect—as both D.M. and the trial court believed—of vacating D.M.'s original delinquency adjudication. We hold that once it had adjudicated D.M. as delinquent, the trial court lacked authority to dismiss the proceeding, to vacate the delinquency adjudication, or to terminate probation. D.M.'s term of probation terminated automatically on April 7, 2010, pursuant to the court's original dispositional order. If he is statutorily eligible to do so, D.M. may move to expunge the adjudication of delinquency and seal his juvenile record pursuant to D.C.Code § 16–2335 (2001).[1]

## I.

Fifteen-year-old D.M. was arrested for the theft of a cell-phone from a plainclothes police officer. He was charged in the Family Division of the Superior Court with one count of robbery, in violation of D.C.Code § 22–2801, and one count of felony receipt of stolen property, in violation of D.C.Code § 22–3232. At a status hearing held on October 7, 2009, D.M. pled involved to one count of misdemeanor theft. Moving directly to the dispositional stage of the proceeding, the court found that D.M. was in need of care or rehabilitation and adjudicated him delinquent. The court then ordered that D.M. be subject to a term of six months' probation, to expire on April 7, 2010.

Less than a week before his probation was to expire, D.M. petitioned the court to terminate his delinquency proceeding for "social reasons."[2] D.M. presented evidence to show that he had done an exemplary job of complying with the terms of his probation: he had completed more than the mandatory amount of community service, maintained reasonably good grades in school, enrolled in college preparatory classes, observed a nightly curfew, and remained out of trouble. D.M. told the court that he had learned from his experience. D.M. argued that all of this showed he was no longer in need of care or rehabilitation, and that the case against him should be dismissed "in order to prevent [him] from unnecessarily acquiring a juvenile record."

The government opposed D.M.'s motion, and a hearing was held on April 7, 2010, the day D.M.'s probation was set to expire. At the hearing, the parties argued over whether the court had authority under D.C.Code § 16–2317 and Rule 48 of the Superior Court Rules of Juvenile Proceedings to dismiss the proceeding. The government contended that, pursuant to § 16–2317(d)(3), a determination that D.M. was

---

1. All sections of the D.C. Code cited to in this opinion are to the 2001 version unless otherwise specified.

2. A dismissal for "social reasons" refers to the power of the court to terminate a petition "in the interest of justice and the welfare of the child," where it finds by clear and convincing evidence "that the child [named in the petition] is not in need of care or rehabilitation." Super. Ct. Juv. R. 48(b); see In re M. C. F., 293 A.2d 874, 876–77 (D.C.1972).

not in need of care or rehabilitation could have been made only at the dispositional hearing, which had occurred six months earlier, on October 7, 2009. *See* D.C.Code § 16–2317(d)(3) (2010 Supp.) ("To overcome the presumption of a need for care and rehabilitation in subsection (c) of this section, the Division must find by clear and convincing evidence *at the dispositional hearing* that the child is not in need of care or rehabilitation before it may terminate proceedings.") (emphasis added). As the dispositional hearing had already taken place and the court had at the time determined that D.M. was in need of care or rehabilitation, it was impossible under the statutory scheme for the court to revisit the issue and make a new "need for care or rehabilitation" determination on D.M.'s motion six months later. Therefore, argued the government, the court no longer had authority to dismiss the proceeding on this ground. The government suggested that if D.M. wished to avoid having a juvenile record, he could instead file a motion to seal the record of his juvenile proceeding under D.C.Code § 16–2335.

D.M. argued that the court retained authority to dismiss the proceeding, but that this power arose under D.C.Code § 16–2317(d)(2) (2010 Supp.), which provides that "[d]eterminations of whether a child is in need of care and rehabilitation may only be made *at or after* the dispositional hearing." (emphasis added). D.M. pointed out that a prior, temporary version of subsection (d)(2) had specified that the care or rehabilitation determination could be made only "*at* the dispositional hearing," but that the Council of the District of Columbia had ultimately included the words "or after" in the final version of the statute. (emphasis added). This additional language, argued D.M., should be interpreted to allow the court to dismiss the proceeding even after the dispositional hearing.

After some discussion, the trial judge concluded that "the overarching purposes of the statute seem to me to compel the reading that [subsection (d)(2)] controls instead of [subsection (d)(3)], because it's not abundantly clear to me why [the determination that a child is in need of care or rehabilitation] would have to be made ... at the dispositional hearing." Holding that it did have authority to make a new determination, the court found "clear and convincing evidence" that D.M. "[was] not in need of care and rehabilitation at this time," and granted D.M.'s motion to dismiss the proceeding.

The government filed a timely notice of appeal, challenging the trial court's authority to make a new determination as to D.M.'s need for "care or rehabilitation," and also challenging the notion that dismissal of the proceeding would operate to vacate D.M.'s original delinquency adjudication or otherwise erase the record of the proceeding. Each party relies upon the arguments it made before the trial court, and also makes a number of new arguments. After oral argument before this court, we ordered the parties to submit supplemental briefing on several specific questions. The Public Defender Service filed a brief *amicus curiae* in support of D.M.

## II.

The question of the Superior Court's authority in this case depends on an interpretation of various statutory provisions and court rules, a task to which we apply *de novo* review. *See Everton v. District of Columbia,* 993 A.2d 595, 596 (D.C.2010). A complicated statutory scheme underpins our interpretation, and we first describe how the scheme works.

The District of Columbia initiates a delinquency proceeding against a juvenile by filing a petition in the Family Division of

the Superior Court. D.C.Code § 16–2305(d). The Family Division then holds a hearing (or series of hearings) to determine whether the juvenile named in the government's petition should be adjudged delinquent. D.C.Code § 16–2317. A finding that a juvenile is a "delinquent child"[3] requires a two-part showing: the government must establish that the child both (i) "committed a delinquent act," and (ii) "is in need of care or rehabilitation." D.C.Code § 16–2301(6).

The two elements of this determination are made in different hearings, which are often joined in practice. At the "factfinding hearing," the court determines "whether the allegations in the petition are true," D.C.Code § 16–2301(16), i.e., whether it has been proven beyond a reasonable doubt that the juvenile in fact committed a delinquent act.[4] D.C.Code § 16–2317(c) (2011 Supp.). If the court finds that the juvenile committed a delinquent act, it moves to the "dispositional hearing" where the court determines "whether the child ... is in need of care or rehabilitation and, if so, what order of disposition should be made." D.C.Code § 16–2301(17)(A); see D.C.Code § 16–2317(c).[5] A juvenile is adjudicated a "delinquent child," only if the juvenile is found (i) to have committed a delinquent act at the factfinding hearing, and (ii) to be in need of care or rehabilitation at the dispositional hearing. D.C.Code § 16–2301(6); see In re M. C. F., 293 A.2d at 877 ("Delinquency adjudication consists of two steps: First, a factfinding hearing must be held to determine whether the allegations of the petition are true, and then, if the determination is made, a dispositional hearing is necessary to decide whether the child is in need of care or rehabilitation and, if so, what disposition should be made.").

Depending on the stage of this two-step process, the trial court has authority to either dismiss the government's petition or terminate the delinquency proceeding.[6] While these two actions sometimes have the same effect, they are not identical. If, at the initial factfinding hearing, "the [court] finds that ... allegations [in the delinquency petition] have not been established by proof beyond a reasonable doubt ... the [court] *shall dismiss the petition* and order the child released from any detention or shelter care or other restric-

---

**3.** A "child" is defined as a person under the age of eighteen, but this definition does not include a person who is sixteen years of age or older who has been charged with one of several specified, very serious offenses, or a traffic offense. D.C.Code § 16–2301(3).

**4.** A "delinquent act" is "an act designated as an offense under the law of the District of Columbia, or of a State if the act occurred in a State, or under Federal law." D.C.Code § 16–2301(7).

**5.** If the court determines at the factfinding hearing that the child committed a delinquent act "which would constitute a criminal offense if committed by an adult," then there is a "rebuttable presumption" at the dispositional hearing that the child is in need of care or rehabilitation. D.C.Code § 16–2317(c)(2) (2011 Supp.).

**6.** The evolution of the court's jurisdiction to dismiss the petition at the factfinding stage, or at or after the dispositional hearing, but prior to adjudication, commenced in the fifth edition of the Standard Juvenile Court Act of 1949, which allowed for:

"Any decree or order of the court [to] be modified at any time." This [became] the first sentence of Section 26 [of the 6th edition of the Act]; the rest of the section provides explicit protection of the rights of notice, of opportunity for a new hearing, and of petition for review of the decree, in contrast to the broad language of the earlier provision under which courts might have abused their discretion to modify decrees. Monroe Paxman, "Evolution of the Standard Juvenile Court Act," 5 N.P.P.A.J. 392, 403 (Oct.1959) (quoting the Standard Juvenile Court Act, 5 N.P.P.A.J. 26 (6th ed.1959)).

tion previously ordered." D.C.Code § 16–2317(b)(2) (emphasis added). If, at the subsequent, dispositional hearing, after a finding beyond a reasonable doubt that the juvenile committed the delinquent act, "the Division finds that the child is not in need of care and rehabilitation, it *shall terminate the proceedings* and discharge the child from detention, shelter care, or other restriction previously ordered." D.C.Code § 16–2317(d)(1) (2011 Supp.) (emphasis added). Regardless of whether the petition is dismissed at the factfinding hearing or the proceeding is terminated at the dispositional hearing, the immediate result is the same: the juvenile will not be adjudicated a "delinquent child," D.C.Code § 16–2301(6), and is released from any restraint because one or both of the elements required for adjudication will not have been established. Once a juvenile has been adjudicated delinquent (i.e., found to have committed the offense beyond a reasonable doubt and to be in need of care and rehabilitation by clear and convincing evidence), final judgment is entered. *See* D.C.Code 16–2329(c); *see also* D.C.Code § 16–2318 (noting that a delinquency adjudication "is not a conviction of crime").

We described the court's power to dismiss a delinquency petition pre-adjudication in *In re C.S. McP*, 514 A.2d 446 (D.C.1986). In that case, a juvenile pleaded involved to simple assault; this satisfied the first fact-finding stage. At his dispositional hearing, the juvenile filed a motion to dismiss the petition for social reasons because "this was appellant's first arrest, the incident was essentially a school yard scuffle, appellant had superior intellectual potential with a tested I.Q. of 131, he had contacted the Black Student Fund to obtain a scholarship to attend private school, and his opportunity for admission to a private school would be jeopardized by an adjudication of delinquency." 514 A.2d at 447. The government opposed the motion on several grounds, one of these being that the court did not have authority under Rule 48 to dismiss a petition after finding (by way of accepting the plea agreement) that the juvenile had committed a delinquent act. *Id.* at 448. Dismissing the petition at the dispositional stage, "purporting to erase an adjudication of guilt," the government argued, "would deprive the court, in case of future need, of a true representation of respondent's prior court contacts." *Id.*

The trial court in *C.S. McP* "wondered whether it had authority to dismiss the petition under Rule 48(b) at the late stage of the disposition[al] hearing," and ultimately assumed it had such authority, but denied the juvenile's motion on the grounds that dismissing the petition would not be in the interests of justice. *Id.* The juvenile appealed, and both parties renewed their prior arguments. Proceeding in a three-part analysis, we agreed that the trial court had the authority to dismiss the petition at the disposition stage.[7] *Id.* at 452.

First, we noted that Rule 48—the relevant rule of juvenile procedure—seemed to contemplate, as a matter of policy, that a court could dismiss a petition for social reasons at the dispositional hearing. The then-in-effect Superior Court Juvenile Rule 48 stated that a trial court "may *at any time during or at the conclusion of any hearing* dismiss a petition and terminate the proceedings relating to the child, if such action is in the interests of justice and the welfare of the child." *Id.* at 448 (quoting Super. Ct. Juv. R. 48(b) (1984))

---

7. The case was reversed and remanded for further proceedings for reasons that are not relevant to this case.

(some emphasis omitted). Rule 48 contained a single comment which provided in relevant part that "[t]he first 2 sentences of section (b) give the judge broad discretion to dismiss cases inappropriate for Division action and refer them to appropriate social agencies." *Id.* at 449 (alteration omitted) (quoting comment to Super. Ct. Juv. R. 48(b) (1984)). This suggested to the court that the drafters of Rule 48 had intended to give the Family Division the power to dismiss a petition when the child who was the subject of the proceeding would be better served by a non-judicial process, even if this option did not become apparent until the dispositional hearing. *Id.* at 449–50.

Bolstering this conclusion, we noted, the first sentence in Rule 48(b) also appeared almost verbatim in Model Juvenile Rule 28, whose commentary made it clear that the rule should be read to allow the dismissal of a petition at the dispositional hearing. Council of Judges, National Council on Crime and Delinquency, *Model Rules for Juvenile Courts* Rule 28 (1969). Model Rule 28 was intended to allow the court to dismiss petitions which charged *de minimis* offenses or offenses which could be more effectively remedied by social intervention than court adjudication.[8] In *C.S. McP,* we concluded that "the approach of the Model Rules on this particular issue—authorizing dismissal of the petition at disposition—has been incorporated into the law of this jurisdiction." 514 A.2d at 449 n. 5.

Second, we observed that D.C.Code § 16–2320, the provision that governed (and still governs) dispositional hearings, did not prohibit the dismissal of a petition at that stage. *Id.* at 449 (citing D.C.Code § 16–2320(a)(5) (1981) ("The Division may make *such other disposition as is not prohibited by law* and as the Division deems to be the best interests of the child.") (alteration omitted)). The rule of juvenile procedure which governed post-factfinding proceedings also did not contain any such prohibition. *Id.* at 449 (citing Super. Ct. Juv. R. 32(b) (1984) ("If the respondent is found not guilty *or for any other reason is entitled to be discharged,* judgment shall be entered accordingly.") (emphasis added)).

Third, we noted that a procedure which allowed a court to dismiss a proceeding at the dispositional hearing followed logically from the definition of "delinquent child." *Id.* The applicable code provision stated then, as it does now, that a child is to be adjudicated delinquent only upon a showing that the child both (i) has "committed a delinquent act" and (ii) is "in need of care or rehabilitation." *Compare* D.C.Code § 16–2301(6) (1981) *and* D.C.Code § 16–2301(6) (2001). Until both findings have been made, there is no delinquency adjudication, and the court is still free to dismiss the petition. 514 A.2d at 449–50 (citing *In re M. C. F.,* 293 A.2d at 877). We concluded that "the adjudication-disposition scheme leaves a critical element of delinquency for determination at

---

8. At any point in the juvenile court process, it may become apparent to the court that further proceedings are unnecessary or would be harmful and that the petition should be dismissed. Even at a detention hearing, for example, facts may be adduced that demonstrate the child's noninvolvement in the acts alleged; and frequently at the adjudicatory hearing the acts alleged will prove to be trivial, not calling for a social study and further

court action. This rule allows the termination of proceedings in such cases and permits the court to dismiss a petition even when it may technically have jurisdiction, thus preventing the child from unnecessarily acquiring a record of adjudication.

*In re M. C. F.,* 293 A.2d at 875 n. 4 (quoting Council of Judges, National Council on Crime and Delinquency, *Model Rules for Juvenile Courts,* Rule 28 at 67 cmt. (1969)).

the disposition[al] hearing. For this reason, therefore, *dismissal of the petition at disposition is not too late*, since a child found not in need of care or rehabilitation is by definition not delinquent." *Id.* at 450 (emphasis added).

We instructed the trial court to consider on remand whether the juvenile was in need of care or rehabilitation.[9] 514 A.2d at 452. If he was in such need, the trial court was to "select an appropriate disposition" in accordance with § 16–2320. *Id.* If the juvenile was not in need of care or rehabilitation, the trial court could either grant the motion to dismiss the petition, or else terminate the delinquency proceeding without removing the record of the finding that a delinquent act had been committed. *Id.* We explained:

> Theoretically, it may appear, [that] a finding that appellant is not in need of care or rehabilitation, and thus is not a delinquent child, would lead automatically to dismissal of the petition at the dispositional hearing, since by definition he would not be "delinquent." We conclude, however, that the better approach is to regard dismissal in such circumstances as a matter of trial court discretion under Super. Ct. Juv. R. 48. It is not inconsistent to find that a juvenile is not a "delinquent child," but to keep of record, D.C.Code § 16–2331(a)(5) (1981), the finding that he or she committed a "delinquent act." In case the juvenile commits an offense in the future, that record could aid the court in fashioning an appropriate disposition. On the other hand, the court may perceive in certain circumstances that a juvenile record of a "delinquent act" would not be "in

the interests of justice and the welfare of the child." Super. Ct. Juv. R. 48. *Id.* at 452 n. 10.

To summarize, in *C.S. McP,* we determined that if a trial court finds that a juvenile has committed a delinquent act, but also determines that the juvenile is nevertheless not in need of care or rehabilitation, it must terminate the delinquency proceeding. In addition to terminating the proceeding, the court may also take the further step of dismissing the government's petition. This dismissal is not automatic, and the decision whether to do so rests in the discretion of the trial court. If the court dismissed the petition, no finding of involvement in a criminal offense would appear in the child's juvenile record. If the court did not dismiss the petition, the finding of involvement in a delinquent act would remain on the juvenile case record.

### III.

This finally brings us to the issue presented in this case, which arises—unlike in the pre-adjudication setting addressed in *C.S. McP*—in a post-adjudication setting. We now address two interrelated issues raised in the appeal:

(1) The Family Court's authority to dismiss a juvenile petition.

(2) Relief available to the delinquent juvenile post-adjudication.

As the trial court recognized, there is an apparent conflict between subsections (d)(2) and (d)(3) of § 16–2317. However, a contextual reading of all the relevant statutory provisions leads us to hold that the Family Court may not dismiss a juvenile petition after an adjudication of delinquency. We also hold that even when the court

---

9. The case was remanded so that the disposition finding could be made before a different judge, because the government had breached its plea agreement with the juvenile by allo-

cuting against dismissal for social reasons. 514 A.2d at 452 (citing *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

exercises its authority to dismiss a petition, before delinquency adjudication, that dismissal does not, by itself have the effect of expunging the juvenile's records. Our conclusions rest primarily on three considerations: (1) the two-step structure of a juvenile adjudication established in the statute; (2) the statute's allocation of responsibility over probation of juveniles after a delinquency adjudication; and (3) the specific statutory provision for expungement of juvenile records.

### A. The Family Court's Authority to Dismiss a Juvenile Petition.

■ Since our holding in *C.S. McP* over twenty years ago, a number of changes have been made to the applicable statutes and rule. As we now discuss, rather than the more open-ended authority that the statute conferred upon trial judges when *C.S. McP* was decided, D.C.Code § 16–2317(d)(2) now provides that "[d]eterminations of whether a child is in need of care or rehabilitation may *only* be made *at or after the dispositional hearing.*" D.C.Code § 16–2317(d)(2) (2011 Supp.) (emphasis added). At first glance, the italicized language would appear to empower a trial court to reexamine a juvenile's need for care or rehabilitation after the delinquency adjudication. Similarly, the current version of Rule 48 provides that "*[a]t or after a disposition hearing,* the judicial officer *may dismiss a petition and terminate the proceedings* relating to the respondent, if the judicial officer finds by clear and convincing evidence that the child is not in need of care or rehabilitation." Super. Ct. Juv. R. 48(b) (2011) (emphasis added). Read literally, this language in the statute and Rule 48 would appear to authorize the trial court to reexamine the juvenile's need for care or rehabilitation after the delinquency adjudication, and dismiss the government's petition if the court found there was no continuing need for care or rehabilitation. Citing both of these provisions, D.M. argued in his motion to dismiss, as he does on appeal, that "a determination that [D.M.] is not in need of rehabilitation can be made at any time at or after the dispositional hearing," and, if the court makes such a determination, the court could dismiss the petition even if the court had previously adjudicated D.M. as delinquent. We disagree. Our conclusion that the court does not have authority to dismiss a petition—essentially vacating a juvenile proceeding once an adjudication of delinquency has been made—does require an explanation for the inclusion of "at or after" currently in D.C.Code § 16–2317(d)(2) and Rule 48(b).

Our review of the evolution of this provision supports that the words "at or after" were not meant to convey a broad power to redetermine the need for care or rehabilitation and dismiss proceedings after adjudication of delinquency has been properly entered. When *C.S. McP* was decided, and until 2004, § 16–2317(d) read in its entirety as follows: "If the [court] finds that the child is not in need of care and rehabilitation, it shall terminate the proceedings and discharge the child from detention, shelter care, or other restriction previously ordered." D.C.Code § 16–2317(d) (2003 Supp.). Notably absent from the statute was any temporal restriction on when a court could make the finding and terminate the proceeding. Similarly, the pre–2004 version of Rule 48(b) provided that "[t]he judicial officer may *at any time during or at the conclusion of any hearing* dismiss a petition and terminate the proceedings...." Super. Ct. Juv. R. 48(b) (2004) (emphasis added).

Section 16–2317 underwent several amendments in 2004 and 2005. It was amended first by the Juvenile Justice Emergency Act of 2004 (the "Emergency

Act"), then again by the Juvenile Justice Temporary Act of 2004 (the "Temporary Act"), and finally by the Omnibus Juvenile Justice Amendment Act of 2004 (the "Omnibus Act"). Section 16–2317 was amended because, in the view of the Council of the District of Columbia, too many repeat juvenile offenders were having their delinquency petitions dismissed *prior to* the dispositional hearing. These dismissals were routinely justified on the grounds that, even though the juvenile had been found to have committed a delinquent act, he was already receiving some form of rehabilitation due to delinquency adjudications resulting from prior offenses. As a result of these insufficiently-justified dismissals, there was a perception that some youth offenders were not "being held accountable for the serial nature of their crimes." D.C. Council, Report of the Comm. on the Judiciary on Bill 15–537 at 12 (June 22, 2004). In an effort to solve this problem, the Council amended § 16–2317 to make it more difficult for juvenile proceedings to be dismissed at an early stage.

The changes that were enacted in the Emergency Act and in the Temporary Act were identical.[10] These changes were incorporated nearly verbatim into the draft of the Omnibus Act that was accompanied by the Act's Committee Report. In that version, subsection (d) read as follows:

> (1) If the Division finds that the child is not in need of care or rehabilitation, it shall terminate the proceedings and discharge the child from detention, shelter care, or other restriction previously ordered.
>
> (2) Determinations of whether a child is in need of care or rehabilitation may

only be made *at the dispositional hearing.*

> (3) In order to overcome the presumption of a need for care or rehabilitation in subsection (c), the Division must find by clear and convincing evidence *at the dispositional hearing* that the child is not in need of care or rehabilitation before it may terminate proceedings.
>
> (4) The fact that a child is receiving care or rehabilitation in another case shall not be the only grounds for dismissal.

D.C. Council, Comm. Print of the Comm. on the Judiciary on Bill 15–537 at 13–14 (June 22, 2004) (emphasis added).

It was thought that these changes would rein in the problem of premature dismissals. According to the "Committee Reasoning" section of the Committee Report:

> The Committee endorses Bill 15–537's recommended changes to the juvenile disposition process. This section requires that a Judge cannot dismiss a juvenile case simply because the child is already receiving "care or rehabilitation" as a result of a previous charge and allows a Judge to dismiss a case only at the dispositional phase of a case. The Committee concurs with the Executive that without these legislative changes, juvenile cases can be dismissed, regardless of the merits of the case, simply because the child is already in the system for a different offense. This provision is designed to address the problem of youths with multiple (some witnesses spoke of kids with 20 or more Unauthorized Use of Vehicle charges) charges, but who are not being held accountable for the serial nature of their crimes. This provision is necessary in order to insist that youth are held accountable for their actions and to ensure greater

---

**10.** *See* D.C. Law 15–497, July 19, 2004, 51 D.C.Reg. 7844 (Emergency Act); D.C. Law 15–223, October 4, 2004, 51 D.C.Reg. 9624

(Temporary Act). The Emergency Act was reenacted several times while passage of permanent legislation was pending.

accountability and more consistent standards regarding dismissals.

D.C. Council, Report of the Comm. on the Judiciary on Bill 15–537 at 12 (June 22, 2004).

Then, for reasons that are unexplained, the words "or after" were inserted into the phrase "at the dispositional proceeding" in subsection (d)(2)—but not in subsection (d)(3)—in the Engrossed Original of the act. *See* Bill 15–537, Engrossed Original at 17–18. This new language also appeared in the final Enrolled Original of the act, *see* D.C. Law 15–261 § 502(b), 52 D.C.Reg. 1188 (Mar. 17, 2005), and it remains in the current codification, § 16–2317.[11] There is no indication, in the Committee Report or elsewhere, as to why these two words ("or after") were added to subsection (d)(2), or why the same change was not made to subsection (d)(3).[12]

Words in a statute are to be given their plain meaning, unless to do so would lead to absurd results. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C.1983). We think that a literal reading of "or after" that would allow dismissal of a petition after there has been an adjudication of delinquency would not be sensible in the context of the statutory scheme for juvenile adjudication. First, in light of the sudden and unexplained appearance of the words "or after," we find it implausible in the extreme that, having added a number of restrictions on the court's ability to dismiss juvenile proceedings *prior to* disposition, the Council would have intended—without expressing any rationale—to expand a court's ability to dismiss juvenile proceedings *after* disposition and entry of a delinquency judgment. *Cf. Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 531 A.2d 274, 276 (D.C. 1987) ("If the Council had intended to effect such a dramatic change … it is reasonable to assume that there would have been at least some specific reference to it in the language of the Act or, at least, within its legislative history."). Second, assuming the Council had intended to allow the court to terminate a juvenile proceeding after disposition, a number of other changes would need to have been made to Title 16, Chapter 23, to take into account the existing scheme, which transfers authority over the juvenile from the court to the executive agency with custody of the juvenile. But, there were no such changes. *See Atwell v. Merit Sys. Prot. Bd.*, 670 F.2d 272, 286 (1981) ("[I]t is …

---

11. A conforming amendment was made to the language of Rule 48(b) in 2009. *See* Superior Court Promulgation Order 09–05, effective October 1, 2009. Rule 48(b) currently provides:

    *At or after a disposition hearing*, the judicial officer may dismiss a petition and terminate the proceedings relating to the respondent, if the judicial officer finds by clear and convincing evidence that the child is not in need of care or rehabilitation. The reason for such dismissal shall be set forth upon request of the Attorney General. A hearing on this issue may be held at the request of any party. If a motion to dismiss is made under this section, the opposing party shall have an opportunity to respond and, if necessary to preserve the rights of either party,

    the disposition hearing shall be continued for a hearing on the motion.
    Super. Ct. Juv. R. 48(b) (emphasis added).

12. We are not persuaded by appellee's argument that the Council did not include "or after" in both subsections (d)(2) and (d)(3) because "[i]t would be redundant to apply the presumption after the dispositional hearing because at that stage, there would already be a judicial finding in place that the child was in need of care or rehabilitation." The Council required the presumption whether the child was in need of care or rehabilitation be overcome by "clear and convincing" evidence, and it would be illogical that the Council intended for this standard to apply at the initial dispositional hearing but not at subsequent dispositional hearings.

unequivocally our mission to take arguably contradictory statutory passages and to reconcile them where the intent of [the legislature] is clear but the implementation somewhat faulty. In reaching this result, we are guided as well by the cardinal canon of statutory construction that dictates that provisions should, whenever possible, be construed to achieve consistency"). *See also Odeniran v. Hanley Wood, LLC,* 985 A.2d 421, 428 (D.C.2009) ("Where, as here, 'individual subsections' of a statute or regulation are 'capable of more than one reading, our task is to search for an interpretation that makes sense of the statute [or regulation] as a whole.'") (alteration in original) (quoting *Cass v. District of Columbia,* 829 A.2d 480, 482 (D.C.2003)); *Floyd E. Davis Mortg. Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) ("It is an accepted principle of law that a statute is to be construed in the context of the entire legislative scheme."). In the absence of any express purpose or support elsewhere in the statutory scheme—and in view of the interpretive problems raised—we are reluctant to give the words "or after" the expansive reading that D.M. urges on the court.

Moreover, we believe it is possible to give some meaning to the words, "or after," without doing violence to the overall statutory scheme and the Council's expressed purpose in amending the statute to limit judges' authority to truncate the process of juvenile adjudication. As the government argues, the words "or after" would apply to a situation where the dispositional component of a juvenile proceeding requires more than one hearing. Such an occurrence is specifically contemplated by Rule 48. *See* Super. Ct. Juv. R. 48(b) (2011) ("If a motion to dismiss is made under this section, the opposing party shall

have an opportunity to respond and, if necessary to preserve the rights of either party, the disposition hearing shall be continued for a hearing on the motion."). Similarly, the Uniform Juvenile Court Act provides the court with the option to continue a dispositional hearing "for a reasonable period to receive reports and other evidence bearing on the disposition or the need for treatment or rehabilitation." National Conference of Commissioners on Uniform State Laws, Uniform Juvenile Court Act of 1968, *Hearing—Findings—Dismissal* § 29(e) (July 30, 1968). The use of the phrase "at or after" would clarify that the court may dismiss the proceeding after a series of dispositional hearings (though not after adjudication of delinquency).

It is also possible that the drafters of the amendment to § 16–2317 reviewed this court's opinion in *C.S. McP* and, taking note that "the approach of the Model Rules on this particular issue—authorizing dismissal of the petition at disposition—has been incorporated into the law of this jurisdiction," decided to incorporate additional language from the relevant Model Rule into § 16–2317(d)(2). 514 A.2d at 450 n. 5. The Model Rule provided in part that *"[a]fter the dispositional hearing,* the court shall enter an appropriate decree of disposition." Council of Judges, National Council on Crime and Delinquency, *Model Rules for Juvenile Courts* at 70 (1969) (alteration in original) (emphasis added) (quoted in *C.S. McP,* 514 A.2d at 449 n. 5). Thus, the use "at or after" would clarify that the court could issue its order after the dispositional hearing if there were some reason not to do so at the time of the hearing itself. A delay between the end of the dispositional *hearing* and the issuance of the dispositional *order* is specifically contemplated by relevant rules as well.

*See* Super. Ct. Juv. R. 32(c)(1) (2011).[13] However long the period of time allowed "after the dispositional proceeding" to issue an order may be in a given case, it is a period of time that has unquestionably terminated once the court has entered its dispositional order.

Once a juvenile has been found involved in a delinquent act and also in need of care or rehabilitation, that juvenile has been adjudicated a "delinquent child." D.C.Code § 16–2301(6). A judgment is entered to that effect, "set[ting] forth the plea, the findings, the adjudication, and the dispositional order." Super. Ct. Juv. R. 32(d) (2011). This judgment is then "signed by the judicial officer and entered by the clerk of the Family Court." *Id.*[14] Once this point has been reached, the delinquency adjudication is final, and supersedes the government's original delinquency petition. *See* Super. Ct. Juv. R. 101 (2011) (defining a "petition" as "the legal document containing the *allegations* upon which the court's jurisdiction is based") (emphasis added). Dismissal of the government's petition after a proper formal adjudication has been pursued to completion, would be contrary to basic notions of the finality of judgments, and unnecessary to accomplish the goal of Model Rule 28 "to prevent the child from unnecessarily *acquiring* a record of adjudication." (emphasis added). As we said in *C.S. McP,* the court has authority to dismiss the petition up to the point of disposition, "since a child found not in need of care or rehabilitation is by definition not delinquent." 514 A.2d at 450. But, once the adjudication is made, the court's judgment stands and is not subject to revision.[15] Therefore, to the extent the trial court sought, by its post-adjudication order of termination, to *vacate* its prior adjudication of delinquency, we do not think such power can be fairly inferred from any sensible interpretation of § 16–2317 or Rule 48.[16]

13. Super. Ct. Juv. R. 32(c)(1) provides:

The dispositional order shall be entered without unreasonable delay. Before entering a dispositional order the judicial officer shall afford the respondent or the respondent's counsel an opportunity to comment on the predisposition report and, in the Court's discretion, to introduce testimony or other information relating to any alleged factual inaccuracy in the report. The judicial officer shall also afford counsel an opportunity to speak on behalf of the respondent and shall address the respondent personally, and the respondent's parent, guardian, or custodian, if present, and ask if they wish to make a statement in the respondent's behalf or to present any information that might affect the dispositional order. The [Office of the Attorney General] shall have an equivalent opportunity to address the Court and present information pertinent to disposition. The Court may also hear from victims of crime or members of their immediate family.

14. Exactly such a judgment was entered in D.M.'s proceeding on October 7, 2009.

15. In contrast, in the abuse and neglect system, the court retains jurisdiction once the child "has been adjudicated neglected and a dispositional order has been entered." D.C.Code § 16–2323(a). The statute requires the Division to "hold a review hearing at least every 6 months ... in an out-of-home placement" and "at least every year for all other children." D.C.Code § 16–2323(a)(1) & (2). There is no equivalent provision in the statute for juvenile delinquency proceedings.

16. This conclusion does not conflict with our opinion in *In re D.L.,* 904 A.2d 367 (D.C. 2006). In that case, a juvenile had been placed on probation, and the government later filed a petition to revoke probation. The issue on appeal was whether the trial judge could simply deny the government's petition to revoke, while acknowledging that the juvenile had violated the conditions for probation imposed by the court. We held that the judge could not, because D.C.Code § 16–2327(d) (which incorporates the alternative dispositions provided in D.C.Code § 16–2320) expressly limits the options available to the judge. It was in that context we indicated

If the statute were interpreted as permitting the court to terminate the delinquency proceeding based on D.M.'s good performance before the probationary period was set to expire, as would have been the case here, the court would have in effect terminated the period of probation that the court had imposed. That result is inconsistent with the statutory provisions and rules allocating responsibility for adjudication of delinquency and supervision of custody during probation. If the court adjudicates a juvenile as delinquent, the court is authorized to order a disposition of probation pursuant to § 16–2320(c)(3). Once such a disposition has been entered, "[the] order of probation ... shall remain in force for a period not exceeding one year from the date entered, but *the Director of Social Services*[17] *or the agency* providing supervision *may terminate supervision* at any time that it appears the purpose of the order has been achieved." D.C.Code § 16–2322(a)(3) (emphasis added). If the Director of Social Services or the supervising agency makes a decision to terminate probation, notice of the termination "shall promptly be reported in writing to the [court]." *Id.* at § 16–2322(d); *see also* Super. Ct. Juv. R. 32(f) (2011). Notice is sent to the court because it is the Director or supervising agency that terminates probation, not the court. ·

We have interpreted this scheme, in a variety of circumstances, as vesting sole authority to make post-dispositional decisions in the director of the agency responsible for supervision.[18] *See, e.g., In re K.A.,* 879 A.2d 1, 11 (D.C.2005) (in case of delinquent child committed to agency custody, holding that trial court did not have authority to release juvenile from agency custody, and noting that "[i]n delinquency cases, the only power that the trial court retains after a commitment—and even then, only if it is reserved in the commitment order—is a veto power over [the agency]'s decision to release the delinquent juvenile"); *In re M.O.R.,* 851 A.2d 503, 512 (D.C.2004) (in case of delinquent child sentenced to probation, holding that court had no authority to extend term of probation in absence of motion to that effect from agency director, and noting that the agency director "is the person with statutory authority to terminate pro-

that, "as permitted by the statute, only if the judge determines by clear and convincing evidence that [the juvenile] is no longer in need of care and rehabilitation, § 16–2317(d), the case may be terminated." *Id.* at 373. But *D.L.* did not squarely present, nor did the court address, what the statute permits in terms of *when* in the course of the proceedings the judge has authority to terminate a case, nor did the opinion refer to dismissal of a petition

17. The Director of Social Services is the official charged with supervising the "intake procedures, counseling, education and training programs, probation services, and such other services as the court shall prescribe," D.C.Code § 11–1722(a), for all juvenile adjudications in the Superior Court.

18. Unlike in the juvenile system, in the adult criminal system the trial court has jurisdiction over probation and the executive branch has jurisdiction over incarceration and post-sentence supervision. *See* D.C.Code § 24–304; *Richardson v. United States,* 927 A.2d 1137, 1144 n. 13 (D.C.2007) ("The Court Supervision and Offender Services Agency is in charge of day-to-day monitoring during probation on behalf of the Superior Court, as well as during supervised release on behalf of the U.S. Parole Commission. The setting of initial conditions of probation ... the modification of those conditions, early discharge from probation ... issuance of a warrant or summons for violation of the conditions of probation ... and revocation remain, however, within the discretion of the court, in the case of probation, and the U.S. Parole Commission, in the case of supervised release ... except that extension of term of supervised release may be ordered by the court only upon motion from the Parole Commission.") (citations omitted).

bation before its expiration date"); *In re P.S.*, 821 A.2d 905, 912 (D.C.2003) (in case of delinquent child committed to agency's custody, holding that court had no authority to order agency to place juvenile in a particular facility); *see also In re J. M. W.*, 411 A.2d 345, 347 (D.C.1980) ("It is generally well established that a court is without authority to suspend or impose a sentence of a nature or in a manner not specified by statute." "As a result, the judiciary is frequently without power to modify, review or alter a sentence, regardless of a change in circumstances, once it becomes final.") (citations omitted). In light of the clearly established allocation of authority between the court and the executive, the words "at or after" in § 16–2317(d)(2) may not be read so expansively as to permit dismissal of a petition, effectively infringing on the agency director's clear statutory prerogative to control a juvenile's term of probation.[19]

B. *Relief available to the delinquent juvenile post-adjudication.*

█ Our holding that the court is not authorized to dismiss a petition post-adju-dication does not mean, however, that a juvenile's subsequent good behavior is not recognized. The question is how. Appellant argues that in order to further the rehabilitative purpose of the juvenile system, the court must have authority to terminate the proceedings after the delinquency adjudication, and that termination would necessarily have the effect of vacating the adjudication. Specifically, he argues, dismissal after disposition permits a child—even one who has been adjudicated delinquent—to say truthfully that he has not been adjudicated delinquent. In making this argument, appellant makes a distinction between dismissal of a delinquency determination and sealing of juvenile records (whether or not the child has been adjudged delinquent).

We conclude appellant's premise is untenable because the statutory juvenile scheme has specific procedures for accomplishing the objectives appellant seeks. We begin by noting that the Council has enacted detailed provisions concerning records related to juvenile proceedings. All juvenile records are subject to confi-

19. An analogy with the adult criminal law context is instructive on this point. A criminal court may vacate a judgment of guilt only upon specific grant of authority, such as, under D.C.Code § 23–110(c), which provides that a new trial may be granted if "(1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, (3) or there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Similarly, the Innocence Protection Act, D.C.Code § 22–4135 authorizes a trial court to "(1) vacate a conviction and dismiss relevant counts with prejudice if the court concludes by clear and convincing evidence that movant is actually innocent, or (2) grant a new trial if court concludes by a preponderance of the evidence that movant is actually innocent."

In comparison to the adult criminal system, the authority upon which the court may vacate a juvenile delinquency adjudication is found in D.C.Code § 16–2324(a) (2011 Supp.), which states "[a]n order of the Division under this subchapter may be *set aside* if (1) it was obtained by fraud or mistake sufficient to set aside an order or judgment in a civil action; (2) the Division lacked jurisdiction; or (3) newly discovered evidence so requires." (emphasis added); and § 16–2335.01 (2011 Supp.), which, similar to the Innocence Protection Act for adults, provides that a court may vacate a delinquency adjudication or grant a new factfinding hearing at any time, but only on the grounds of actual innocence based on new evidence. These provisions are equivalent to those in the adult criminal system in requiring a showing of some fundamental defect in the original proceeding that undermined the legitimacy or correctness of the judgment.  .

dentiality requirements. *See* D.C.Code § 16–2331(b). The statute specifically identifies a limited number of persons and entities (e.g., counsel for the juvenile, parents, teachers, treatment facilities) who can access juvenile case, social, police and other law enforcement records for particular purposes. *See* D.C.Code §§ 16–2331, –2332, –2333, –2333.01 (2011 Supp.), –2333.02 (2011 Supp.) & –2335, –2335.01 (2011 Supp.), & –2335.02 (2011 Supp.). There is a difference in status between a juvenile whose petition is dismissed at the factfinding stage and a juvenile whose proceeding is terminated at the dispositional stage. The juvenile in the first category will have no record of the proceeding on her "juvenile case record" because the government's petition will have been dismissed (though any "law enforcement record" or "juvenile social record" prepared in connection with the petition will remain).[20] For juveniles in the second category, where the proceeding is terminated at the dispositional stage, the government's petition, as well as a record of the court's determination of the juvenile's "involvement" in the delinquent act, will remain on her juvenile case record. This difference could become relevant if, in a future proceeding, a judge or other authorized person or entity examines the juvenile case record to see whether the juvenile had ever been involved in a prior delinquent act.[21] However, a trial court is empowered to equalize the discrepancy created between these two categories of juveniles. In the case of a juvenile whose proceeding is terminated at the dispositional stage, a trial court may, in its discretion, take the further step of dismissing the government's petition, as we held in *C.S. McP.*[22]

Post-adjudication, however, D.C.Code § 16–2335(a) provides that, under certain circumstances, upon motion of a juvenile or the Division's own motion, "the Division shall *vacate* its order and findings and shall order the sealing of the case." (emphasis added). Section 16–2335, in other words, recognizes the existence of a valid judgment of delinquency, but provides a procedure for expunging it as well as sealing records to further the rehabilitative purpose of the juvenile justice system. To obtain that relief, two important conditions must be met: "two years have elapsed since the final discharge of the person from legal custody or supervision, or since the entry of any other Division order not involving custody or supervision"; and the juvenile "has not been subsequently convicted of a crime, or adjudicated delinquent or in need of supervision prior to the filing of the motion, and no proceeding is pending seeking such conviction or adjudi-

---

**20.** *See* D.C.Code § 16–2331 (defining "juvenile case records," which include petitions, findings, and judgments); *id.* at § 16–2332 (defining and providing for confidentiality and limited access to "juvenile social records," which includes "preliminary inquiries, predisposition studies, and examination reports"); *id.* at § 16–2333 (same, with respect to "law enforcement records").

**21.** There is no difference between the two categories of juveniles for purposes of adult criminal sentencing. *See* D.C. Voluntary Sentencing Guidelines Manual § 7.23 (June 15, 2011) (increasing a criminal history score only for a "conviction or juvenile adjudication

for which *a sentence or disposition was imposed*") (emphasis added).

**22.** Dismissal of the government's petition automatically operates to terminate the proceeding. The reverse is not true; if the court merely terminates the proceeding pre-adjudication, the government's petition remains in the juvenile case record unless the court affirmatively dismisses it. *See C.S. McP*, 514 A.2d at 452 n. 10. The interaction between a pre-adjudication dismissal authorized by *C.S. McP* and the statutory provisions concerning retention of and access to juvenile records is beyond the scope of this opinion.

cation." D.C.Code § 16–2335(a)(1)(B) & (2).[23] Upon determining that these conditions have been satisfied, the Family Court has the authority to give the juvenile the benefit of a full expungement by vacating the prior adjudication, and thereafter sealing all records (case, social and law enforcement). *See* D.C.Code § 16–2335(a). Consistent with the rehabilitative purpose of the juvenile system,

> Upon the entry of the order, the proceedings in the case shall be treated as if they never occurred. All facts relating to the action including arrest, the filing of a petition, and the adjudication, filing, and disposition of the Division shall no longer exist as a matter of law. The Division, the law enforcement department, or any other department or agency ... and the person who is the subject matter of the records may reply, to any inquiry that no record exists with respect to such person.

D.C.Code § 16–2335(c). In addition, pursuant to a 2011 amendment, the statute also provides that, after expungement, "a juvenile shall not be required to disclose, and shall have the right to refuse disclosure of his or her juvenile delinquency history in an application for employment, education, or housing." *Id.* at (h). The broad relief provided by § 16–2335 in effect nullifies the adjudication, subject to continued good behavior. *See* § 16–2335(e).

In contrast, dismissal of the petition at the factfinding stage under D.C.Code § 16–2317(b)(1) & (2), or, "at or after" the dispositional hearing under D.C.Code § 16–2317(d)(1) & (2) (2011 Supp.) and Rule 48 (2011), does not have the effect of sealing all records of the case, nor does it authorize the juvenile to deny the existence of a juvenile record. The trial court's authority to dismiss the government's petition at the factfinding stage or at the dispositional hearing is premised on a different ground, that there is no need to keep the child in custody or under supervision, and is not a substitute mechanism for expungement or sealing records outside the requirements expressly provided for that purpose in the statute.

Our conclusion is further supported by the enactment of recent amendments to the statute. Under the Expanding Access to Juvenile Records Amendment Act of 2010 (effective March 8, 2011), D.C.Code § 16–2335.02 (2011 Supp.), a juvenile may move *immediately* to seal all records after a petition for delinquency has been dismissed "without adjudication"—i.e., without a finding that the juvenile committed a delinquent act—if she can persuade the court that the petitioned offense did not occur or she is actually innocent of the offense.[24] This affords complete expunge-

---

**23.** In the adult criminal system, an equivalent provision authorizes sealing criminal records, but requires the passage of longer periods of time before relief may be granted. *Compare* D.C.Code § 16–803 (2011 Supp.) (adult) *with* D.C.Code § 16–2335 (juvenile). The broader relief and shortened time requirement for juveniles shows the Council sought to promote the rehabilitative purposes of the juvenile justice system.

**24.** If the motion is submitted within four years after the proceeding has terminated, the juvenile must make a showing by a prepon-

derance of the evidence, D.C.Code § 16–2335.01(b)(1) & (2), (c) (2011 Supp.); if the motion is filed after four years since the proceeding has terminated, the juvenile must make a showing by clear and convincing evidence. D.C.Code. § 16–2335.02(d) (2011 Supp.). *Cf.* D.C.Code § 16–802 (2011 Supp.) (providing that an adult may file a motion to seal based on actual innocence; within four years from termination of the prosecution, innocence must be proven by a preponderance of the evidence; if after four years, the burden of proof rises to clear and convincing evidence.)

ment: "The effect of relief ... shall be to restore the movant, in the contemplation of the law, to the status he or she occupied before being arrested or charged." D.C.Code § 16–2335.02(I) (2011 Supp.). In recommending this provision, the Committee on Public Safety and the Judiciary sought to balance three competing interests: "crafting reforms that support rehabilitation, preserve confidentiality, yet increase accountability." D.C. Council, Comm. on Pub. Safety and the Judiciary Report on Bill 18–344 at 4 (June 29, 2010). These policy reasons and the detailed statutory provisions dealing with the treatment of juvenile records confirm that the Council intends that the expungement of delinquency adjudication proceedings and sealing of records occur only upon a finding of actual innocence or, upon fulfillment of the statutory requirements in D.C.Code § 16–2335(a)(1) & (2) (2011 Supp.). Therefore, we conclude that, viewed as a whole, the statute does not permit a trial judge to erase an adjudication of delinquency based on good behavior during the probationary period.

\* \* \*

We hold that the trial court did not have authority to dismiss the petition based on a new determination as to D.M.'s need for care or rehabilitation after it had already reached a final disposition and entered judgment adjudicating D.M. delinquent. Nor did the trial court have authority to vacate or set aside its earlier delinquency adjudication outside of the strictures for expungement of records in D.C.Code § 16–2335 or the limited conditions in D.C.Code § 16–2324, see note 19 *supra*. Because the court had already entered a judgment of delinquency. The court's grant of D.M.'s motion to dismiss for social reasons was unauthorized by statute and is hereby vacated. D.M.'s term of probation

expired by the terms of the court's dispositional order on April 7, 2010.

*So ordered.*